COMMERCIAL NATIONAL BANK v. NEBRASKA STATE BANK ET AL.

[FILED OCTOBER 28, 1891.]

1. **Assignment for Creditors:** ATTACHMENT: INTERVENTION BY ASSIGNEE. E. F. H. carried on a banking business in the name of the Nebraska State Bank, of Pawnee City. The original promotors and owners of the business had, before transferring it to E. F. H., taken ineffectual steps towards organizing the bank under the laws of this state. Neither of the owners had perfected such organization and E. F. H. was left the sole owner. Being in failing circumstances, he made an assignment of all his property, including that of his banking business, to the sheriff of the county, under the assignment law, for the benefit of all of his creditors. Subsequently the Commercial National Bank of Omaha brought its action against the Nebraska State Bank of Pawnee City, and attached the property assigned. L., the successor of the sheriff, as assignee, chosen by creditors, was permitted to intervene and defend against the action, and upon

hearing, upon affidavits, the attachment was discharged. Upon error to the supreme court, *held*, that the assignee was a proper person to intervene, which it was his duty to do by permission of the court for the protection of the property in his hands as assignee.

2. ———: TITLE VESTS IN ASSIGNEE. That the title of all of the property of C. F. H., not exempt from execution, including that used in the banking business, passed to and vested in the assignee.

ERROR to the district court for Pawnee county. Tried below before BROADY, J.

*Montgomery & Jeffrey*, for plaintiff in error:

Strunk and Lipp should not have been allowed to intervene. (*Bennett v. Whitcomb*, 25 Minn., 148; *Cornell College v. Iowa Co.*, 32 Id., 520; *Harwood v. Quimby*, 44 Id., 385; *Van Gorden v. Ormsby*, 55 Id., 657; *Kimbro v. Clark*, 17 Neb., 403.) Nor should they have been permitted to file and be heard upon their motion to discharge the attachment. The court erred in discharging the attachment. Hempstead and his individual creditors are now estopped to deny that the Nebraska State Bank was a corporation as to the creditors. (1 Waterman, Corp., sec. 41; *Housel v. Creamer*, 13 Neb., 298.) Issuance of stock is not essential to the existence of a corporation. (Cook, Stock and Stockholders, secs. 10, 192, and cases; *Mitchell v. Beckman*, 64 Cal., 117.) The attempted assignment was unlawful. (*State v. Commercial State Bank*, 28 Neb., 677).

*Story & Story*, and *D. D. Davis, contra:*

The Nebraska State Bank is a corporation. (*Livesey v. Omaha Hotel*, 5 Neb., 52, 53, 67, 73, 74; *Gent v. M. & Mut. Ins. Co.*, 107 Ill., 652; *People v. R. Co.*, 35 Am. Dec. [N. Y.], 552, 555; *Selma & Tenn. R. Co. v. Tipton*, 39 Am. Dec. [Ala.], 355.) The assignees have a right to intervene. (*Smith v. Jones*, 18 Neb., 481; *Lininger v.*

*Raymond,* 12 Id., 170; *Dunham v. Greenbaum,* 54 Ia.,
303; *Speyer v. Ihmels,* 21 Cal., 281.) The garnishee
should have been discharged and the property released from
the attachment. (*Speyer v. Ihmels,* 21 Cal., 281–88; *Rudolf v. McDonald,* 6 Neb., 166; *State v. Sandford,* 12 Id.,
425; *Wells v. Lamb,* 18 Id., 353; *Schlueter v. Raymond
Bros.,* 7 Id., 281; *Lininger v. Raymond,* 9 Id., 46; 12
Id., 171; *Morehead v. Adams,* 18 Id., 574.

COBB, CH. J.

This action was brought by the plaintiff in error, in the
district court of Pawnee county, January 13, 1890, against
the Nebraska State Bank of Pawnee City, one of the defendants in error, alleging that the petitioner is a national
banking corporation, and that the defendant is a corporation under the general laws of this state; that on November 2, 1889, the Pawnee Hay Company and S. E. Smith,
for value received, made their promissory note to the defendant, due in ninety days, at ten per cent interest from
maturity until paid, for $3,000. The defendants represented the makers to be solvent and itself to be responsible, in assets above liabilities, to the amount of $25,500,
under which representations the plaintiff in error purchased the note for $2,939.33. It is alleged that these
representations were false, made for fraudulent purposes,
and that the defendant and the makers of the note were
insolvent, by reason of which the plaintiff in error offers
to rescind its contract, tenders back the note to defendant,
deposits it with the clerk of the court, and claims the sum
of $2,939.33 with interest at seven per cent from November 4, 1889.

II. On November 25, 1889, C. D. Dundas made his
promissory note for $1,600, due in sixty days, with interest
at ten per cent after maturity, payable to the order of defendant. Prior to which the defendant, by its officers,
had represented to the plaintiff that it was loaning money

to Dundas on his notes, which were well secured by valid county orders drawn in favor of defendant upon Cass and Lancaster counties, for money due to Dundas from said counties. The defendant, by its officers, had also represented that it was financially responsible, and was possessed of assets above its liabilities to the amount of $25,500.

On November 29, 1889, at the request of the defendant, under the representations stated, the plaintiff bought the note of Dundas, paying the defendant therefor $1,579.02. Recently the plaintiff was informed, and now alleges, that the defendant's representations as to the security of the note and the solvency of defendant, were false, and were knowingly made for fraudulent purposes. By reason of which the plaintiff rescinds the contract and purchase of the note, and hereby tenders the note back to defendant, and deposits the same for that purpose with the clerk of the court, and claims judgment for $1,579.02 with interest at seven per cent from November 29, 1889.

III. On December 17, 1889, C. D. Dundas made his promissory note for $435, due in sixty days, with interest at ten per cent after maturity, payable to the order of defendant, which the plaintiff, on December 18, 1889, bought for the sum of $428.99, under the same conditions and representations made by the defendant as those stated, which contract and purchase is also hereby rescinded, and the note tendered back, and for that purpose deposited with the clerk of the court. The plaintiff demands judgment for the aggregate sum of $4,947,34 with interest as stated.

On January 28, 1890, the petition of A. D. Strunk, sheriff of Pawnee county, assignee of E. F. Hempstead, and Reuben Lipp, his successor, as assignee, intervenors in the suit, set up that on December 21, 1889, Hempstead was the sole owner of the Nebraska State Bank of Pawnee City, and was alone responsible for its liabilities; that on said day Hempstead was also engaged in operating the Pawnee City Electric Light Company as its sole owner

and proprietor, and being unable to meet his obligations, made an assignment of all his property, real and personal, including the electric light company's plant, and the effects of the Nebraska State Bank, for the benefit of his creditors, to A. D. Strunk, sheriff of Pawnee county, who accepted the trust and took possession of the property; that on December 30, 1889, Hempstead filed in the office of the county judge an inventory of his property, and the county judge gave notice to creditors to meet at his office at 1 o'clock P. M., January 14, 1890; that on January 13 the plaintiff commenced its action attaching certain real and personal property in the hands of Strunk, assignee, and serving notice of garnishment upon him on the following affidavit, dated January 10, 1890:

"A. P. Hopkins, president of the plaintiff, deposes and says that the plaintiff has commenced an action against the defendant in the district court of Pawnee county to recover $4,947.34 now due and payable to the plaintiff from defendant on demand for money had and received by defendant to the plaintiff's use in the year 1889, to-wit, November 4, $2,939.33; November 29, $1,579.02; December 18, $428.99; that said claim is just, and that he ought, as he believes, to recover thereon the sum of $4,947.34, and that the said defendant has property and rights in action which it conceals; that the defendant has disposed of its property with the intent to defraud its creditors; that the defendant fraudulently contracted the debt and incurred the obligations for which said suit is about to be brought; that A. D. Strunk, sheriff of Pawnee county, as affiant believes, within said county, has property of the defendant in his possession, which an officer cannot come at for levy thereupon of an order of attachment, consisting of the books and papers of defendant, notes, mortgages, bills receivable, other evidence of indebtedness, money, accounts of overdrafts, chattels of various description of which affiant cannot give. And further deposes and says that the

sheriff, by reason of his interest in the subject-matter of this litigation and his relation to the property to be attached, and because he must be served as a garnishee in this action, will not, and cannot, faithfully perform his duties in this action about to be commenced, and should not be required or allowed to serve process therein."

The order of attachment, and notice as garnishee to the sheriff, issued to the coroner January 13, 1890, was returned as follows: "Received this order January 14, 1890, and not being able to come at the property of the Nebraska State Bank, claimed to be in the possession of the sheriff of Pawnee county, on January 15, 1890, at 11 A. M., I served on the sheriff a certified copy of the order, and a written notice to appear on April 14, 1890, and answer therein as required, a copy of which is herewith returned.

"Also, on the same day, at 11:30 A. M., in the presence of J. C. French and W. H. Mahan, two disinterested residents of the county, I attached the real estate: 'Beginning at the northeast corner of lot 1 in block 2 in Pawnee City, according to the record plat thereof, running thence west 77 feet, thence south 22 feet, thence east 77 feet, thence north 22 feet to the place of beginning. Also the south one-third of lots 1, 2, and 3 in block 13 in Pawnee City, according to the recorded plat. And after administering an oath to the appraisers, French and Mahan, to make a true inventory and valuation of said real estate in writing, I did then, with them, make an inventory and appraisement of the same which is herewith returned; and also at the same time posted upon each of said tracts a duly certified copy of this order, there being no occupant thereon.' First tract appraised at $5,000, second tract at $6,000."

On January 14, the creditors, eighty in all, met at the county judge's office and chose, by ballot, Reuben Lipp to succeed Strunk as assignee, which choice was approved. On January 21, following, Strunk and Lipp entered an

inventory and appraisement of the entire estate of Hempstead to the county court, and within two days Lipp filed his bond in $70,000, more than double the amount of the appraised value of the estate assigned, to the satisfaction of the county judge, which bond was deposited with the county clerk.

That said assignment having been made for the benefit of all the creditors, by reason of the plaintiff's attachment and garnishment proceedings the sheriff was prevented from turning over to his successor, as assignee, the property attached and garnished, and prevented from discharging his trust as assignee.

The intervenors ask that the assignment of Hempstead be decreed valid, and that the attachment of the plaintiff, and all garnishments under it, be discharged, and that the assignees be decreed to be in possession of all the property for the purpose of an equal division and payment to all the creditors.

On January 28, following, the intervening parties moved to dissolve the attachment and to discharge the attached property and garnishee, for the reason that the facts stated in the affidavit for the attachment are not sufficient to justify the same and the statements therein are untrue; and because the property at the time of the attachment was in the possession and control of the assignee of Hempstead, the owner of the defendant bank, under a valid deed made for the benefit of all of his creditors, and Lipp is the duly qualified successor and and assignee of Hempstead.

On January 29, following, the defendant moved the discharge of the attachment as to the whole of the property attached on like grounds.

On February 15, following, the plaintiff moved that the petition of the parties intervening, and all motions by them, be stricken from the files for the reason that the same have been presented without leave, by parties without interest in the subject-matter of the action.

On February 17, following, the intervening parties answered the plaintiff's petition denying the allegations, but setting up that Hempstead indorsed and sold to the plaintiff the notes described, and before the commencement of this suit, indorsed to the plaintiff as collateral security fourteen other notes amounting to $2,939.94; also certain orders from C. D. Dundas which the plaintiff retained in possession without rendering them to the assignee of Hempstead; that the plaintiff was collecting the notes and county orders and applying the proceeds upon other notes which were indorsed and sold by Hempstead to the plaintiff along with those described in his petition.

On April 29, 1890, there was a trial to the court, on the motions and issues submitted, the defendent making default of appearance and defense, the court held that the plaintiff's attachment be sustained against the defendant, the Nebraska State Bank of Pawnee City, and that the defendant's motion to discharge attachment be overruled, to which the defendant and the intervenors duly excepted. It was also held that the motion to strike the intervenor's petition from the files be overruled, and that Strunk and Lipp be permitted to intervene and defend the action, and prosecute their motion to discharge the attachment and for release of the property, to which the plaintiff duly excepted. It was further held that the intervenor's motion be sustained, and that the property attached in the hands of Strunk, assignee and garnishee, be discharged and released, to which the plaintiff duly excepted.

The plaintiff in error assigns its objection that Strunk and Lipp should not have been permitted to intervene, and prosecute their motion for the discharge of the attachment, which motion should have been overruled.

It appears from the record that on September 9, 1885, the defendant filed in the office of the county clerk of Pawnee county, articles of incorporation:

"For the purpose of carrying on the business of bank-

ing under the corporation laws of Nebraska, the subscribers to the capital stock of the corporation adopted the following articles of incorporation:

· "1. The name and title of Nebraska State Bank.

"2. The place and location of its general business transactions, Pawnee City, in Pawnee county.

"3. The general nature of its business, the purchase and sale of bills of exchange, receiving deposits, and discounting notes, with such other business as is generally transacted by bankers.

"4. The authorized capital stock shall be $50,000, divided into shares of $100 each, one-half of which shall be paid in on October 26, 1885, and the remainder in installments at such times as the board of directors may order.

"5. The commencement of the corporation shall be October 26, 1885, and the termination October 26, 1915.

"6. The highest indebtedness the incorporation shall at any time assume, exclusive of bank deposits, shall be $25,000.

"7. The affairs of the corporation shall be conducted by a board of directors of not less than three, who shall be elected annually on October 26, provided that each share of stock shall entitle the holder to one vote.

"8. The board of directors, a majority of whom shall be a quorum to do business, shall elect one of their number to be president, and shall appoint a cashier and such other officers and clerks as may be required to transact business. They shall also have power to make and adopt necessary by-laws to govern the same, provided that each share of stock shall entitle the holder to one vote.

"September 9, 1885.

"(Signed)                    W. C. HENRY.
                             "A. H. HENRY."

It also appears from the record that on December 21, 1889, E. F. Hempstead made the following assignment of his property:

"Know all men by these presents, that whereas I, E. F. Hempstead, of Pawnee county, Nebraska, sole owner of the Nebraska State Bank, am indebted in considerable sums of money and have become unable to pay and dischage the same with punctuality, or in full, and desirous of making a fair and equitable distribution of all my property and effects not exempt from attachment and execution, among my creditors, do hereby, in consideration of the premises and of the sum of one dollar to me in hand paid, convey to the sheriff of Pawnee county, Nebraska, A. D. Strunk, the following described real estate, situate in said county :

"Bank property.—All that parcel of land beginning at the northeast corner of lot 1 in block 2, in Pawnee City, and thence running west 77 feet, thence south 22 feet, thence east 77 feet, and thence 22 feet north to the place of beginning, with all the appurtenances thereunto belonging.

"All lot 10 in block 19, in North Pawnee City, according to the recorded plat.   Also lots 1, 4, and 5 in block 1, in North Pawnee City, this being the homestead of the grantor, out of which he reserves his homestead right of $2,000.

"Also the south third of lots 1, 2, and 3 of block 13, of Pawnee City, including the electric light plant thereto attached, with all franchises, lamps, poles, wires, and property of every description whatever.

"Also section 36, township 8, range 14 west, situate in Kill Creek township, of Osborn county, Kansas, together with all my personal property of every name and description, excepting only such as is exempt from attachment and execution.

"This conveyance is made in trust for the use and benefit of all my creditors and in conformity to an act of the legislature, entitled 'An act regulating the voluntary assignment for the benefit of creditors, proceedings thereunder, and to prevent the fraudulent violation of the same, approved February 26, 1883.'   And the said trustee is

hereby authorized and directed to take possession of all my said real and personal estate not exempt by law and to sell and dispose of the same and to convert it into money and apply the avails thereof: First, to the payment of any public tax or assessment charged against myself on said property; second, the payment of the fees and allowances of the assignee, the county judge, sheriff, and other officers; third, the payment of preferred claims; fourth, the balance to be divided equally among my creditors.

"The real estate claimed by me as exempt is a two-thousand-dollar interest as homestead to lots 1, 4, and 5 of block 1, of North Pawnee City, Nebraska.

"E. F. HEMPSTEAD."

The order of attachment, based upon the claim that the indebtedness of the defendant was fraudulently contracted, and that there was a fraudulent assignment of its property to the sheriff, is supported by the supplemental affidavits of A. P. Hopkins, William G. Maul, and Alfred Millard, officers of the plaintiff in error, and that of J. K. Goudy, showing the condition of the defendant bank at the close of business, October 30, 1889, as sworn to and published by its officers:

RESOURCES.

| | |
|---|---|
| Loans and discounts | $34,552 41 |
| Overdrafts, secured and unsecured | 2,747 26 |
| Other stocks, bonds, and mortgages | 1,600 00 |
| Due from national banks | 1,283 63 |
| Assets not enumerated | 3,000 00 |
| Real estate, furniture, and fixtures | 7,000 00 |
| Current expense and taxes paid | 2,603 04 |
| Checks and other cash items | 1,448 13 |
| Bills of other banks | 1,859 00 |
| Fractional paper currency, nickels, and cents | 8 09 |
| Specie | 413 05 |
| Legal tender notes | 500 00 |
| Total | $57,014 61 |

### LIABILITIES.

| | | |
|---|---|---|
| Capital stock paid in | $21,000 | 00 |
| Undivided profits | 2,373 | 00 |
| Deposits subject to check | 9,016 | 91 |
| Demand certificates of deposit | 18,871 | 61 |
| Notes and bills rediscounted | 15,572 | 86 |
| Total | $57,014 | 61 |

In rebuttal, it appears, from the affidavit of S. Ed. Smith, that from January 1, 1887, to July 1, 1889, he was engaged in the banking business with E. F. Hempstead, under the name and style of the Nebraska State Bank; that no stock was ever issued by the bank, and that he never owned any shares of stock in the bank; that on July 1, 1889, he disposed of his interest in the bank to E. F. Hempstead, and from that time until its failure, December 21, 1889, he had no connection with it except as cashier for Hempstead at such odd times as he was needed; that he was only in the bank occasionally, and did not pretend to keep informed as to its business; that on September 1, 1889, he called on Messrs. Hopkins and Maul, at the plaintiff's bank in Omaha, and represented that he had met with losses, but made no representation that he was solvent, or that the hay company was solvent, nor did he in any manner attempt to mislead them in regard to the status of the hay company, but told them that Hempstead had drawn money out of the bank and put it into the electric light company, and into a residence for himself; and probably also that Hempstead was solvent, as he then fully believed that to be true; that he represented that it was on account of his losses in the hay business, and the withdrawal of money by Hempstead, that the bank was compelled to carry so heavy an amount of rediscounts; that he made no representation as to the responsibility of the rediscount paper, generally, as he was not then informed about it; that he did not remember that the Dundas loans

were mentioned, but explained to them about the Duer paper, and other overdue paper in litigation.

From this interview, the plaintiff concluded that the Nebraska State Bank should furnish it further collaterals, which, soon after, were furnished. Affiant was in the state of Illinois when the assignment was made, knew nothing of it, and had no interest in the property conveyed, of which E. F. Hempstead was the sole owner at the time.

It appears also from the affidavit of E. F. Hempstead, that on December 21, 1889, he was the actual and sole owner of the Nebraska State Bank, defendant, and that neither S. Ed. Smith, nor any other person, had any interest of any kind therein; that the only relation Smith had borne to the bank after July 1, 1889, was that of a cashier on a stated salary, working for affiant, and was authorized to sign commercial paper as cashier; that no stock was ever issued by the bank, and that Smith never owned any shares of stock therein; that, so far as affiant represented in March, 1889, the Pawnee Hay Company and Smith had a large amount of hay on hand, ready for market, which when sold would pay their obligations, he believed the same to be true, and but for a depression in the market with unfavorable weather which caused 1,200 tons to be wasted and lost, would have proved true; that during the summer of 1889 the hay company and Smith paid $3,000 of the $6,000 of their paper discounted by the plaintiff; that affiant told the plaintiff and its officers that the defendant bank was secured by orders for warrants on the different counties where Dundas was working as a bridge contractor, authorizing the county clerks to pay to the Nebraska State Bank whatever sums were owing to Dundas; that he had such orders for warrants to be issued, and sent them to the counties, and believed the plaintiff may yet realize a large amount of money thereon; that he fully believed that the loans were good and secured; that within the past year Dundas has paid and taken up notes of

$3,000; that affiant never represented that he only let Dundas have money when such orders were deposited.

At the time of making this assignment affiant was the only person interested in the bank, or who had authority to make an assignment.

It is objected by the plaintiff in error that the intervention and appearance of Strunk and Lipp were not sanctioned by any claim of interest in the matter in litigation; that the debt of the defendant, for money loaned to it, was wholly foreign to any individual interest set up by the intervenors, who were without any legal motive to intervene in the matter in controversy, or the attachment laid on the property in controversy. The property was in the hands of the intervenors as assignees of the plaintiff's debtor; in fact, for the benefit of all the creditors. This fact is not disputed. Section 38 of chapter 6 of the Compiled Statutes, p. 87, provides: "(Suits by assignee.)—The assignee shall have full power, except as in this act otherwise provided, to sue for and recover in his own name as assignee all and singular the estate, property and effects, real and personal, and amounts owing upon choses in action, and to execute and give releases and acquittances and discharges, and generally to do all manner of things requisite and convenient for the speedy and effectual collection of the estate which the assignor or assignors might or could have made, given, or done if such assignment had not been made." This authority, we hold, entitles the parties to plead as intervenors in this action, as representing the defendant in interest and the creditors of the assignor. It is believed to be the proper rule that a voluntary assignment for the benefit of creditors, if valid, is not a mere agency of the debtor, but that it remains as a trust for the benefit of the creditors.

In the action of *Lininger v. Raymond*, 12 Neb., 170, Justice MAXWELL, who delivered the opinion, held that " where the debtor parts with all control of his property,
23

and devotes it absolutely to the payment of his debts without reservation, the advantage to the creditors is clear and direct, and although there may be delay in the payment of the debts, still the assignment is not fraudulent and will not be declared void. The assignee is a trustee for the creditors. Under his assignment he may sue for and recover any money or property belonging to the trust estate, no matter where the same may be."

The question was again more elaborately considered, by the same justice, in the case of *Smith v. Jones et al.*, 18 Neb., 481, and it was admitted that in England the "courts seem to hold that primarily such assignments do not create a trust, nor clothe the creditors with the character *cestuis qui trustent*, but merely make the assignee an agent of the debtor to dispose of and apply the property under the debtor's directions; yet in this country it is held that a voluntary assignment for the benefit of creditors, if valid, is not a mere agency of the debtor, but creates trust relations, and the creditors are the beneficiaries. The assignee, therefore, can maintain an action to protect the trust estate." (1 Johns. Ch. [N. Y.], 119; 4 Id., 136; Id., 523; 4 Pick. [Mass.], 518; 8 Id., 113; 18 Id., 46; 5 Watts [Pa.], 343; 38 Ala., 370.)

In this view we conclude that Lipp, the assignee in office, by virtue of his election under the statute, was a party interested, or at least claiming an interest in the matter in litigation, and as such entitled to intervene in the action, and to become a party thereto under the provisions of sec. 2 of chap. 100 of the Session Laws of 1887; and that it was his duty so to intervene under the provisions of sec. 38 of chapter 6, Compiled Statutes of 1889.

It clearly appears from the affidavits preserved in the bill of exceptions that the defendant bank was never duly or otherwise organized as a corporation under the laws of this state. There does not appear to have been either capital stock divided into shares, paid in, or otherwise; nor a

board of directors, nor other officer, or officers, capable of doing business as a banking corporation.

The principal question presented by the record and argument of counsel is, whether the property levied on under the plaintiff's attachment, as well as that in the hands of the assignee at the time of the service of the summons in garnishment upon him, passed to the assignee under and by virtue of the deed of assignment of E. F. Hempstead? There is but little evidence as to the title of the real property ; none whatever even tending to show title to any of it in the real or pretended Nebraska State Bank of Pawnee City.    From the affidavits of W. C. Henry and S. E. Smith, it appears that the paper title to the lot upon which the business of banking was carried on was, at the date of the assignment, in E. F. Hempstead, and not in the bank. As to the other parcels of real property, there is really no evidence where the paper title was; but as they were described in the deed of assignment of E. F. Hempstead, I think that, until there is at least some evidence to the contrary, it will be presumed that the title was in him.    This upon the ground that in this court all doubtful facts will generally be construed in such a way as to uphold the judgment of the court below.    As to the chattel property contemplated by the deed of assignment, it was the property of the assignor only upon the theory that the Nebraska State Bank of Pawnee City was merely a name assumed by him.    This, as a matter of fact, was true, but it is equally true that, in the transaction of the business with the plaintiff, upon which the indebtedness for which the suit was brought (as well as that with the other creditors severally, for whose benefit, as well as that of the plaintiff, the assignment was made), he assumed to act as the president of a banking corporation legally incorporated, and doing business as such.    It cannot be disputed that in a proper case, presented by appropriate pleadings, he would be estopped to deny the truth of such assumption, or to

avail himself of the fact that it was false.   But while I am not entirely without some degree of doubt, I conclude that this is not a case for the application of the doctrine of estoppel.   The right of a debtor, who is unable to pay his debts, to make an assignment of all his property to be equally distributed among his creditors in proportion to their several demands is a right to be upheld when possible and its exercise encouraged; and while he may be estopped to make such disposition of his property by judgment or deed, he cannot be, by mere conduct, or matter of estoppel in pais.

The deed of assignment was executed, acknowledged, and delivered on the 21st day of December, 1889.   At that date there was neither deed nor record standing in the way of such assignment; the plaintiff's affidavit for attachment being made January 10, 1890 and filed three days later.   It is not claimed, nor could it be, that E. F. Hempstead, or his assignee, had committed any act, or failed in any duty, proper to be considered in this case, between the date of the assignment and that of the attachment.   So that the status at the date of the assignment is alone to be considered in the application of the law to this case.

If it be admitted, which I think it must under the proofs, that Hempstead was largely indebted, that his creditors were numerous, that he was unable to pay his debts promptly and in full, and that he was the owner of a large amount of property, real and personal, it follows that it was his duty, as well as his right, to make a general assignment, with the qualities provided by statute, the first of which is that it "shall be of all the property, real and personal, of the assignor therein named, wherever situated, except so much thereof as may be exempt from levy and sale on execution under the general laws of the state."   It made no difference that he had by his conduct held out to the world in general, and to part or all of his creditors in

particular, that part or all of such property was the property of a bank. Neither the letter nor the spirit of our assignment law will permit such conduct to stand in the way of its execution and full operation. Otherwise the object and purpose of the assignment law would be defeated in all cases similar to the one at bar. Unless an assignment executed by Hempstead would convey the title to the property in question, then it was entirely without the scope of the assignment law, for there was no other person, either natural or artificial, in existence who could assign it. The right to make an assignment in trust for the benefit of its creditors doubtless exists in a corporation but it can only be exercised by the corporation itself and not by its president by virtue of his general powers as such. So, even were it possible that the conduct of Hempstead might for certain purposes and the aid of the doctrine of estoppel make him the president of a bank, it could not furnish him with a board of directors nor empower him to perform any act legally vesting in such board. (See Burwell on Assignments, sec. 54.)

As hereinbefore stated, the assignment law in force at the date of the assignment, and still in force, requires all assignments under it to be of all the property of the assignor not exempt from execution. It also forbids all preferences of one debt or creditor above another, except in the instance of a laborer's wages to a small amount. Also by requiring all assignments to be made to the sheriff of the county, it renders favoritism in the *personnel* of the assignee impossible and places the execution of the assignment in the hands of a *quasi*-officer who is under a sufficient bond for the faithful execution imposed by the trust contemplated by such assignment. The law thus provides what is believed to be the cheapest, fairest, and most equitable method of distributing the property and assets of an insolvent or failing debtor among his creditors, and the courts will give it a liberal as well as an intelligent con-

struction.   The order and judgment of the district court
assigned for error is

AFFIRMED.

THE other judges concur.