Lancaster County Bank v. Gillilan.

LANCASTER COUNTY BANK, APPELLEE, V. JOHN J. GIL-
LILAN ET AL., APPELLANTS.

FILED SEPTEMBER 16, 1896.   No. 6628.

1. **Bill of Exceptions:** SUBMISSION TO ADVERSE PARTY.   A proposed bill of exceptions is not submitted to the adverse party or his attorney of record, within the meaning of the statute, by leaving it at the office of the attorney in his absence.

2. **Voluntary Assignments:** RIGHTS OF ASSIGNEE.   Except as authorized by statute, the assignee under a voluntary assignment for the benefit of creditors may not assert rights beyond those which the assignor might assert in the absence of the assignment, the assignee, except as otherwise provided, representing the assignor and not the creditors.

3. ———: ———: CHATTEL MORTGAGES.   Therefore, the holder of an unrecorded chattel mortgage from the assignor has a right to the mortgaged property superior to that of the assignee, unless the case is one where the statute expressly confers upon the assignee the powers of a creditor.

APPEAL from the district court of Lancaster county. Heard below before HALL, J.

The facts and issues are stated by the commissioner.

*R. J. Greene,* for appellants Gillilan and Lee & Becker:

A voluntary assignment creates a trust for the benefit of the creditors, and the assignee is clothed with power which could not be exercised by the assignor. The assignee took the property discharged of any claim of the appellee, and the appellants Lee & Becker, who bought the property from the assignee, are entitled thereto as against the claim of the appellee. (*Commercial Nat. Bank v. Nebraska State Bank,* 33 Neb., 305; *Lininger v. Raymond,* 12 Neb., 170; *Smith v. Jones,* 18 Neb., 481; *Bingham v. Jordan,* 1 Allen [Mass.], 373; *Travis v. Bishop,* 13 Met. [Mass.], 304; *Denny v. Lincoln,* 13 Met. [Mass.], 200; *Briggs v. Parkman,* 2 Met. [Mass.], 258; *Hanes v. Tiffany,* 25 O. St., 552; *Lindemann v. Ingham,* 36 O. St., 10; *Gibson v. Warden,* 14 Wall. [U. S.], 244; *Stewart v. Platt,* 101 U. S.,

731; *Kilbourne v. Fay,* 29 O. St., 264; *Becker v. Anderson,* 11 Neb., 498; *Earle v. Burch,* 21 Neb., 709; *Conway v. St. Joseph Iron Co.,* 33 Neb., 455; *Houk v. Condon,* 40 O. St., 569; *Sayre v. Hewes,* 32 N. J. Eq., 652; *Brothers v. Mundell,* 60 Tex., 240.)

*R. D. Stearns,* for appellant Houtz:

Where, by statute, a prior unrecorded mortgage is made absolutely void as against a subsequent *bona fide* mortgage, the latter takes priority over the former, though neither of them is recorded. (*Bank of Farington v. Ellis,* 30 Minn., 270; *De Coursey v. Collins,* 21 N. J. Eq., 357; *Coster v. Bank of Georgia,* 24 Ala., 37.)

One claiming under an unrecorded chattel mortgage has the burden of proving that a subsequent mortgagee, claiming under a mortgage duly recorded, had notice of the existence of the unrecorded prior mortgage when the subsequent mortgage was executed. (*Kelly v. Shepherd,* 4 S. E. Rep. [Ga.], 880; *Simpson v. Harris,* 31 Pac. Rep. [Nev.], 1009; *Karst v. Gane,* 32 N. E. Rep. [N. Y.], 1073; *Gandy v. Dewey,* 28 Neb., 175.)

A chattel mortgage executed even a day before a voluntary assignment for the benefit of creditors, to one who is ignorant of an intent to make such assignment, is valid. (*Van Patten v. Burr,* 7 N. W. Rep. [Ia.], 522; *Bierbower v. Polk,* 17 Neb., 268; *Sweetser v. Camp,* 29 N. W. Rep. [Mich.], 507.)

*Walter J. Lamb,* for appellee:

Neither the assignee nor the creditors of the assignor are creditors within the recording acts. Our recording acts as relating to creditors do not refer to general creditors at large, but only to creditors who have judgments and specific liens on the property by levy. (*Ransom v. Schmela,* 13 Neb., 77; *Farmers & Merchants Bank v. Anthony,* 39 Neb., 343; *Brothers v. Mundell,* 60 Tex., 240; *Grace v. Wade,* 45 Tex., 527; *Jones v. Graham,* 77 N. Y., 628; *Stewart v. Beale,* 7 Hun [N. Y.], 411.)

The assignee under a voluntary assignment is not a purchaser, mortgagee, or creditor. A chattel mortgage not filed is in all respects valid as against the assignee under a voluntary assignment. (Burrell, Assignments, sec. 391; Bishop, Insolvent Debtors, sec. 292; *Frow v. Downman*, 11 Ala., 880; *Grangers Life Ins. Co. v. Kampers*, 73 Ala., 325; *Kirk v. Roberts*, 31 Pac. Rep. [Cal.], 620; *Einstein v. Shouse*, 5 So. Rep. [Fla.], 380; *Seay v. Bank of Rome*, 66 Ga., 615; *Fouche v. Brower*, 74 Ga., 251; *Willis v. Henderson*, 4 Scam. [Ill.], 13; *Meyer v. Evans*, 66 Ia., 179; *Rumsey v. Town*, 20 Fed. Rep., 560; *Sandwich Mfg. Co. v. Wright*, 22 Fed. Rep., 632; *Hairgrove v. Millington*, 8 Kan., 480; *Bridgeford v. Barbour*, 80 Ky., 529; *Billings v. Collins*, 44 Me., 271; *Deering v. Cobb*, 74 Me., 332; *Taylor v. Taylor*, 74 Me., 582; *Chace v. Chapin*, 130 Mass., 128; *Hathaway v. Fall River Bank*, 131 Mass., 14; *Clark v. Flint*, 22 Pick. [Mass.], 231; *Pierson v. Manning*, 2 Mich., 453; *Lentz v. Flint & P. M. R. Co.*, 53 Mich., 444; *Flower v. Cornish*, 25 Minn., 473; *Gayden v. Tufts*, 10 So. Rep. [Miss.], 53; *Heinrichs v. Woods*, 7 Mo. App., 236; *Jacobi v. Jacobi*, 14 S. W. Rep. [Mo.], 737; *Hach v. Hill*, 14 S. W. Rep. [Mo.], 740; *Drew v. Drum*, 44 Mo. App., 25; *Shaw v. Glen*, 37 N. J. Eq., 32; *Milton v. Boyd*, 22 Atl. Rep. [N. J.], 1078; *Millhiser v. Erdman*, 98 N. Car., 292; *Van Husen v. Radcliff*, 17 N. Y., 580; *Jones v. Graham*, 77 N. Y., 628; *Kitchen v. Lowery*, 27 N. E. Rep. [N. Y.], 357; *Helms v. Gilroy*, 26 Pac. Rep. [Ore.], 851; *Gammons v. Holman*, 11 Ore., 284; *Knowles v. Lord*, 4 Whart. [Pa.], 499; *Mellon's Appeal*, 32 Pa. St., 121; *Hawks v. Pritzlaff*, 7 N. W. Rep. [Wis.], 303; *Baumbach v. Miller*, 30 N. W. Rep. [Wis.], 850; *Kloeckner v. Bergstrom*, 30 N. W. Rep. [Wis.], 118; *Keller v. Smalley*, 63 Tex., 512; *Stewart v. Platt*, 101 U. S., 731.)

Under the general assignment law of Nebraska the assignee stands in the place of the assignor, and has no rights against secured creditors beyond those of his assignor, except, perhaps, those specially given by statute. (*Housel v. Cremer*, 13 Neb., 298; *Norton v. Pilger*, 30 Neb., 860; *Salladin v. Mitchell*, 42 Neb., 861.)

References as to when the assignee may recover under the statute: *Brown v. Farmers & Merchants Bank*, 36 Neb., 434; *Rumsey v. Town*, 20 Fed. Rep., 560; *Kitchen v. Lowery*, 27 N. E. Rep. [N. Y.], 357; *Travis v. Bishop*, 13 Met. [Mass.], 304; *Chace v. Chapin*, 130 Mass., 128; *Jewett v. Tucker*, 139 Mass., 566; *Clark v. Flint*, 22 Pick. [Mass.], 231.

IRVINE, C.

With the submission of this case on its merits there is also submitted a motion to quash the bill of exceptions. It seems from the record that on the 16th of September, 1893, and within the time fixed for submitting the bill of exceptions, a draft thereof was left at the office of the appellee's attorney, but not delivered to the attorney himself. It would also seem that the proposed bill of exceptions did not come into the actual possession of the attorney until after the expiration of the time allowed; and it was by him returned, with an objection that it had not been served within time. When the matter was submitted to the trial judge he indorsed on the bill the following: "If service of a bill of exceptions at the usual place of business of the attorney of a party to a suit be sufficient service under section 311 of the Code, then the within bill was presented in time. If such service be not sufficient under said section, then within bill was not presented within eighty days from adjournment of court *sine die.* Question is reserved for decision of supreme court." At the same time, however, the judge made the following order: "The within is all the evidence offered and given by both parties upon the trial of this cause, and on the application of the defendant herein this bill of exceptions is allowed by me and ordered to be made a part of the record in this case, subject to the decision of the supreme court upon question whether served in time." One argument advanced in support of the motion to quash is that the order allowing the bill, being conditional, does not amount to a settlement of the bill. We

think, however, that it should be treated as if it were unconditional. There is no provision in our law whereby a district judge may certify a question to the supreme court for decision. He must decide all matters properly presented, and the jurisdiction of this court is to review such decisions, and not to pass upon controverted questions in the first instance. Every decision of the district court is made "subject to the decision of the supreme court," if the parties desire and take proper steps to pursue their remedy. Where a district judge is in doubt as to his authority to settle a bill of exceptions, it is generally proper for him to allow it, so that if a review is desired it may be had speedily on motion, and without resort to an independent action, as is necessary in case of a refusal. We therefore treat the judge's order as one allowing the bill, and his certificate as a finding of the facts.

Section 311 of the Code provides, among other things, that the party excepting shall reduce his exceptions to writing "and submit the same to the adverse party or his attorney of record for examination and amendment if desired." The question is therefore presented whether leaving the proposed bill at the office of the attorney of record is a "submission" thereof to such attorney within the meaning of the statute. The question is a new one in this court, and our attention has not been directed to any adjudications elsewhere under similar statutes. It has been several times said that the object of the statute in requiring a submission to the adverse party or his attorney is to obtain an accurate bill. (*Uhling v. Schellenberg*, 12 Neb., 609; *Howard v. Lamaster*, 13 Neb., 221.) In *Fitzgerald v. Brandt*, 36 Neb., 683, there were several appellees, whose interests were diverse. The proposed bill of exceptions was left at the office of the attorneys for one appellee, and the others were notified that the bill had been left there for their examination and would so remain for the time allowed by law. It was held that this was not a submission within the statute. A summons may be

served by leaving a copy thereof at the usual place of residence of the defendant, and there are other cases where service may be made otherwise than by delivery personally to the party to be served; but such substituted service is valid only because made so by statute, and there can be no doubt that, in the absence of a statute to the contrary, service upon a person means personal service, and nothing else. This statute provides that the proposed bill may be submitted to the adverse party or his attorney of record, but provides for no other manner of service. As has been said, the object of the requirement is to obtain an accurate bill, by giving to the adverse party an opportunity to examine the proposed bill and suggest amendments. The statute permits only ten days for this purpose. Practicing attorneys cannot always be in their offices, and to hold that a proposed bill is properly submitted by leaving it at the office of the attorney during his absence might frequently operate to deprive him of the opportunity of examination and suggesting amendments. There is no provision by which this period of ten days may be extended. On the other hand, the statute allows the party proposing the bill fifteen days from the rising of court in which to submit the bill. (Code, sec. 311; *First Nat. Bank v. Bartlett*, 8 Neb., 319.) This time may be extended by the court to forty days from the adjournment of the term, and, upon showing of diligence, the judge may extend the time for another period of forty days. It would seem, therefore, as if it were the intention of the legislature to allow to the appellant or plaintiff in error ample time to properly submit the bill, and to require prompt action by the adverse party upon its submission. An inability to submit the bill to the adverse party or his attorney, on account of absence of the latter, the party proposing the bill having been diligent, would undoubtedly be good cause for extending the time, and the rights of both parties would thereby be saved; whereas giving the statute such a construction as would be required to sustain this bill would in many cases de-

prive a party, successful in the district court, of his right to suggest amendments. Opposing the construction we have indicated is the fact that contingencies may arise where it becomes impossible to submit the bill within the longest period allowed by statute if personal service is required. The adverse party may be a non-resident. His attorney of record may be absent for a very extended period. Such contingencies are, however, so remote that the legislature has evidently failed to provide therefor, and they are so remote that the court, in order to meet them, should not adopt a construction of the statute which would be disastrous to the rights of the parties under situations frequently arising. The motion to quash the bill is sustained.

The action was by the Lancaster County Bank against John J. Gillilan, W. G. Houtz, G. M. Lee, C. F. Becker, and Theodore Horn. Gillilan was the assignee of Horn under a voluntary assignment for creditors. The Lancaster County Bank held a note, secured by a chattel mortgage, executed by Horn prior to the assignment. Houtz held a subsequent mortgage on the same property. Lee and Becker were purchasers of a portion of the property from the assignee. The action was to foreclose the bank's mortgage. The mortgage of Houtz was executed more than a year after the mortgage to the bank, but was recorded before the bank's mortgage. The court, in response to the issues joined, found that Houtz's mortgage had been executed and filed for record by Horn of his own motion, purporting to secure a debt many times greater than the amount actually due, and that it was executed for the purpose of hindering and delaying the plaintiff in the collection of its debt. The bill of exceptions having been quashed, we must accept this finding as conclusive and as justifying the decree of the court annulling Houtz's mortgage as against the plaintiff. Other findings were that the mortgage to the bank was made August 19, 1890, in good faith and for the purpose of securing a *bona fide* debt; that it was not filed for record

until October 30, 1891. On the same day, but several hours later, Horn's assignment was executed and filed. It was further found that the sale by the assignee to Lee and Becker was made long after the filing of plaintiff's mortgage, and the pleadings admit that Lee and Becker had actual notice of the mortgage at the time of their purchase. Gillilan and Lee and Becker claim the property on the ground that the mortgage not having been filed for record until after the assignment was made, the assignee, and consequently his vendee, have a superior right. The question is therefore presented whether, under section 14, chapter 32, Compiled Statutes, an unrecorded mortgage, if made in good faith, is valid as against the assignee under a voluntary assignment for creditors. Section 14 is as follows: "Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditor of the mortgager, and as against subsequent purchasers and mortgagers in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the county clerk of the county where the mortgager executing the same resides, or in case he is a non-resident of the state, then in the office of the clerk of the county where the property mortgaged may be at the time of executing such mortgage, and such clerk shall indorse on such instrument or copy the time of receiving the same, and shall keep the same in his office for the inspection of all persons; and such mortgage or instrument may be so filed, although not acknowledged, and shall be valid as if the same were fully spread at large upon the records of the county." That such mortgage is valid as between the parties thereto is not open to doubt. (*Becker v. Anderson*, 11 Neb., 493; *Sanford v. Munford*, 31 Neb., 792.) The statute makes such unrecorded mortgage void only against the creditors of the mortgagor and against subsequent purchasers and

mortgagees in good faith.  It is not contended that the assignee is a subsequent purchaser or mortgagee in good faith; but it is contended that the assignee so far represents creditors that he may assert their rights under the statute.  Were the question one of first impression, the writer would be very strongly of the opinion that the assignment being for the benefit of creditors, it should be construed as placing at the disposition of creditors all property which could in any manner be subjected to the payment of their claims; and that for the purpose of so applying assets the assignee should be treated as the representative of creditors and authorized to assert all their rights.  It must, however, be conceded that at the time of the passage of our present assignment law, in 1883, it was the generally established doctrine that a voluntary assignee is the representative, not of creditors, but of the assignor; that he takes the property of the assignee subject to all equities existing against it; and that he can assert, in the absence of statutory authority, no other or greater rights than the assignor might himself have asserted if the assignment had not been made.  A review of the cases would not be sufficiently profitable to justify the expansion of the opinion which would be necessary for that purpose.  Many of them are cited in the briefs.  The authorities are not entirely uniform; but where the courts have held that an assignee is entitled to property as against a mortgage good between the parties, the reason has usually been found in some particular language of acts with relation to the execution or recording of mortgages.  Thus, in Massachusetts it was held that an unrecorded chattel mortgage of property, the possession of which had not been delivered to the mortgagee, was not valid against the assignee in insolvency of the mortgagor; but this was under a statute providing that such mortgages "shall not be valid against any person other than the parties thereto." (*Bingham v. Jordan*, 83 Mass., 373.) It needs no argument to point out the distinction between a statute declaring unrecorded mortgages void as against

all persons except parties thereto, and one declaring them void merely as against creditors and subsequent purchasers and mortgagees in good faith. Still, under a statute similar to that of Massachusetts, the supreme court of Rhode Island held that an assignee in insolvency was not a "person other than the parties" to the mortgage within the meaning of the statute, and that the mortgage prevailed as against the right of the assignee. (*Wilson v. Esten*, 14 R. I., 621.) Aside from such exceptional cases as those to which we have alluded, the decisions have been quite uniform that the assignee takes only the rights of the assignor, and in the absence of statutory authority can assert no greater rights. This was the rule under the last federal bankruptcy act. (*Stewart v. Platt*, 101 U. S., 731.) We begin, then, with the proposition that at the time our assignment law was adopted the almost uniform rule was in favor of the mortgagee as against the assignee. The language of our assignment law is partly taken from the last federal bankruptcy act, and in other respects it is largely modelled upon assignment laws of other states. It is necessary to presume, therefore, that the legislature, in adopting the act, had in view the construction placed by courts of other jurisdictions upon similar acts. The legislature must also be presumed to have had in view the decisions of this court on the general subject. In 1877 there had been passed "An act relating to voluntary assignments for the benefit of creditors, and to assignees therein named, and the settlement of their accounts." (Session Laws, 1877, p. 24.)

In *Lininger v. Raymond*, 12 Neb., 167, goods had been attached in the hands of an assignee by creditors who justified the attachment on the ground that the assignment was fraudulent. Four days prior to the assignment the assignor had delivered promissory notes to a creditor in payment of a debt much less than the face of the notes. The court held that this did not invalidate the assignment. Discussing the question, it was said: "The assignee is a trustee for the creditors. Under such an as-

signment he may sue for and recover any money or prop-
erty belonging to the trust estate, no matter where the
same may be." This language was used *arguendo*, the
position of the court being that although the turning over
of notes to the creditor prior to the assignment may have
been open to attack, the assignee might make the attack
and it would not avoid the assignment. The question be-
ing as to the validity of the assignment, this expression
was clearly *obiter*, and was in no sense an adjudication
that the assignee might maintain such an action.

In *Housel v. Cremer*, 13 Neb., 298, a mortgagee replevied
property from the assignee. The assignee claimed that
the mortgage was fraudulent. The court held distinctly
that the assignee represented simply the assignor, and
not his creditors, and that he could not defeat the mort-
gage on the ground that it was fraudulent as to creditors.
The question was there squarely involved and it was said
by LAKE, C. J., commenting on the statement in *Lininger
v. Raymond, supra*, that the assignee is a trustee for the
creditors: "That the very reverse of this is the correct
rule in the case of a voluntary assignment is shown by an
almost unbroken line of decisions in the courts of this
country, as well as of England.   *   *   *   Where an in-
solvent makes a fraudulent transfer of property to de-
fraud his creditors, so as to deprive himself of the right to
reclaim it, he cannot by a merely voluntary assignment
give the assignee that right." This case was decided in
1882 and was followed in 1883 by the passage of our pres-
ent assignment law. Therefore, when the assignment
law of 1883 was passed it had once been said by the court
that the assignee is a trustee for creditors, and, in effect,
that he might assert their rights; but this was an *obiter
dictum* and had been expressly and very emphatically
overruled in a case presenting the question.

The true rule being thus established, the legislature
within a year passed the present assignment law, and
had it been the intention of the legislature to so change
the law as to give effect to the rule in *Lininger v. Raymond*

and to abrogate the rule in *Housel v. Cremer*, apt language would certainly have been used for that purpose. It clearly was the intention of the legislature to in some respects modify the general doctrine as established by *Housel v. Cremer*. Thus, in section 30 of the assignment law (Compiled Statutes, ch. 6) it is provided that if the assignor shall have made any fraudulent conveyance of his property, or any conveyance of the same for his own benefit, the assignee shall, upon the direction in writing of a majority in number of the creditors, owning two-thirds in amount of all the claims proved against the estate, begin and maintain an action for the purpose of setting said conveyance aside; and in such action he shall have all the rights and be entitled to all the remedies of a judgment creditor of the assignor. It was clearly not the intention then of the legislature to give the assignee a general power to assert the rights of creditors. By the express terms of the act he may only attack a fraudulent conveyance when authorized in writing by the required number of creditors. Again, by section 42, if a person, being insolvent or in contemplation of insolvency, within thirty days before the making of an assignment makes a sale, assignment, transfer, or other conveyance of any part of his property to one who has then reasonable cause to believe him insolvent, or in contemplation of insolvency, and that such sale or conveyance is made with a view to prevent the property from going to the assignee, such conveyance shall be void and the assignee may recover the property or the assets of the insolvent. Here, again, there is no general power to assert the rights of creditors; and a single class of conveyances merely is declared void in such a manner as to permit the assignee to attack them. So, too, by section 43, if a person, being insolvent, or in contemplation of insolvency, within thirty days before the making of an assignment with a view to giving a preference procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or convey-

ance, the person receiving the same having reasonable cause to believe the assignor insolvent, or in contemplation of insolvency, and that such conveyance is made in fraud of the law, the same shall be void and the assignee may recover the property or its value. Here, again, is a single class of controversies opened up by statute to attack by the assignee. There are no other similar provisions; and having in view the generally established rule in other jurisdictions as to the capacity and power of the assignee, and the fact that this court had within a year, in the clearest terms, established in this state the rule that the assignee represents merely the assignor, and may not assert rights peculiar to creditors, we reach almost the certainty of a mathematical demonstration that the legislature, by extending in three peculiar cases the powers of the assignee beyond those which the assignor possessed, did not intend to extend them generally, or to give to the assignor the rights of creditors, except in the cases specially provided.

If doubt remained as to the legislative intent, light is thrown upon it in another direction. Some of the few cases extending to assignees the authority generally to assert the rights of creditors do so upon the ground that from the time of the assignment the property is *in custodia legis,* and creditors are no longer in position to assert their rights on their own behalf. Unless, it is argued, and with some force, the assignee shall be permitted to assert for them what they can no longer assert for themselves, by reason of the assignor's act, their remedy is lost. A somewhat similar position was taken by this court in a very different transaction in *Union P. R. Co. v. Douglas County Bank,* 42 Neb., 469. But by section 33 of the assignment law, notwithstanding the assignment or the fact that a creditor has proved his claim, such creditor may pursue any remedy at law or in equity for the collection of his claim against the assignors or any of their estate or property. So that our assignment law does not in anywise impair the rights of creditors to proceed on their

own behalf, and the argument referred to is, under our law, entirely without force.

A few cases other than those already cited seem to have some bearing on the question and should be considered. Thus, in *Smith v. Jones*, 18 Neb., 481, it was said that where a firm is insolvent its property is a trust fund for the benefit of its creditors; and further, that while in England assignments do not create a trust, in this country it is generally held that a voluntary assignment for the benefit of creditors, if valid, is not a mere agency of the debtor, but creates trust relations; and that the assignee can maintain an action to protect the trust estate. Two observations are to be made in regard to this case. In the first place, it involved a construction, not of the present assignment law, but of the assignment law of 1877, the assignment in question having been made under the former act. It was decided after the passage of the present act, and therefore the legislature could not have been influenced, in passing the present act, by anything in that case. In the second place, the question involved was nothing like that here presented. The title to real estate had been taken in the name of one of two partners, but it had been purchased by partnership funds for partnership purposes. It had been seized on attachment by an individual creditor of the partner in whose name the legal title stood, and the action was to enjoin the confirmation of a sale made, to have the sale set aside and the property applied to the payment of firm debts; in other words, it was, in effect, an action to declare a trust in favor of the assignors, and thereby to enforce a right which they themselves would have had in the absence of the assignment. The decision did not extend to the assignee any power peculiar to creditors and not possessed by the assignors themselves. In *Commercial Nat. Bank v. Nebraska State Bank*, 33 Neb., 292, the doctrine was again asserted that a voluntary assignment creates a trust for the benefit of creditors, and the language in *Lininger v. Raymond, supra*, to that effect was quoted with approval,

without notice of the fact that it had long before been distinctly overruled. The language was not particularly pertinent to the cause, because the right of the assignee was sustained, not on the ground that it was greater than the assignor's right, but because of section 38 of the assignment law, which gives the assignee power in his own name to sue for and recover all property which the assignor could have claimed. So far, then, we have one distinct adjudication under the former law, that the assignee may not assert a claim peculiar to creditors, and some *obiter dicta* intimating that he may, the conclusion in each of the latter cases being drawn from the premise that the assignment creates a trust. That process of scholastic reasoning whereby a name is attached to a particular act or transaction, and then the particular act is lost sight of and a deductive process pursued, based on a syllogism wherein the name selected fulfills the office of a middle term, is always more or less dangerous, and the error into which courts have been led by such a juggling with the term "trust" or "trust fund" admirably illustrates the danger referred to. Such terms are too indefinite to be safely used in such a manner.

In *Brown v. Farmers & Merchants Banking Co.*, 36 Neb., 434, it was said by POST, J., commenting on *Housel v. Cremer*, that "The proposition that the assignee represents the assignor only would not be strictly accurate as applied to the assignment law of 1883." But this was by no means a declaration that the proposition is not true of the act of 1883 except where that act declares to the contrary. The right was there asserted under section 42, already referred to, and in cases within that section, as said in *Brown v. Farmers & Merchants Banking Co., supra,* the assignees' rights are similar to those of a judgment creditor. They are similar because those sections make them so; and that was the effect of the decision.

In *Salladin v. Mitchell*, 42 Neb., 859, it was again said by POST, J., that the conclusion of the court in favor of a right of set-off by a depositor in an insolvent bank

against a debt due to the bank was based on the rule that the assignee "succeeded to the rights of the insolvent banking company as they existed at the time of the assignment, and no other or greater rights."

In *Becker v. Anderson*, 11 Neb., 493, it was held that where a chattel mortgage was void as against creditors, the mortgaged property became assets in the hands of an executor of the mortgagor. This case was based solely upon the authority of *Kilbourne v. Keller*, 29 O. St., 264. Ohio is one of the states which have held that an assignee represents creditors; but in *Kilbourne v. Keller* there was a very cogent dissenting opinion. In *Becker v. Anderson* the mortgagee was himself one of the executors, and the suit was by creditors, and it was not the executors who were attacking the mortgage. Therefore, it is not very clear how the question was considered involved in the case. That the case was not in all respects carefully considered is evident from the fact that in *Marsh v. Burley*, 13 Neb., 261, an important point in *Becker v. Anderson* was expressly overruled, the same judge writing the opinion in both cases, and saying in *Marsh v. Burley* that the statement in *Becker v. Anderson* had been made inadvertently. *Becker v. Anderson* was also decided prior to *Housel v. Cremer*, and if the conclusion in *Becker v. Anderson* is in conflict with that which we have reached, it is also in conflict with *Housel v. Cremer* and was overruled by that case. But whether or not *Becker v. Anderson* is logically opposed to our conclusion we need not determine, because the question now before us is one of statutory construction. The object is to ascertain the intent of the legislature, and we base the construction given the statute on the principle that the legislature in enacting it did so in view of the construction which had then been placed by this court and others upon similar statutes.

There are other cases in which language appears which, taken by itself, might seem to relate to the question; but the facts of the cases render the subjects treated so remote from this question that it would be

useless to refer to the cases.   Our conclusion is that, except as authorized by the statute, the assignee may not assert rights beyond those which the assignor might have asserted.   The judgment of the district court was in accordance with this conclusion and it is therefore

AFFIRMED.