IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

CHAMBERSBURG—OCTOBER TERM, 1829.

WELSH *against* BEKEY, Executor of HAYDEN.

IN ERROR.

·A mortgage of personal property, without a delivery of possession, or the other *indicia* of ownership, is fraudulent as to creditors: and upon the death of the mortgagor, the mortgagee is not entitled to a preference over the other creditors, to have his debt first paid out of the proceeds of the mortgaged property.

WRIT of error to the court of common pleas of Franklin county.

The plaintiff in error was plaintiff below in this action, which was entered to try whether *Jacob Welsh* was entitled to the proceeds of the sale of certain personal property of *Richard Hayden*, deceased, to the amount of his debt, in preference to the other creditors of said deceased, upon the following statement of facts, to be considered in nature of a special verdict:

On the 7th January, 1825, *Richard Hayden* was the owner of two farms, upon one of which he resided, together with a cropper, who farmed the land; the other was in the possession of a tenant, who farmed it upon the shares: when, in consideration that the said *Jacob Welsh* would loan to the said *Richard Hayden*, the sum of two hundred dollars, the following agreement was entered into between them:

"Articles of agreement made and concluded the 7th January, 1825, between *Richard Hayden*, of the township of Washington, county of Franklin, and state of Pennsylvania, of the one part, and *Jacob Welsh*, of the township, county and state aforesaid, of the other part, witnesseth: That whereas the said *Richard Hayden* has this 7th January, 1825, received from the said *Jacob Welsh* an order on *John Fullerton* for the sum of two hundred dollars, which sum, when

8

(Welsh *v.* Bekey, executor of Hayden.)

received by the said *Hayden*, from the said *Fullerton*, the said *Hayden* is to allow the said *Welsh* six per cent. for the use of the said money until paid; and as security to the said *Welsh*, for the true and faithful payment of said sum of two hundred dollars and interest, the said *Hayden* doth assign, transfer and set over unto the said *Jacob Welsh*, and to his heirs, the one half of forty-eight acres of wheat and rye, now in the ground, on the plantation where the said *Hayden* now lives, and the one half of forty-six acres of wheat and rye, now in the ground, on the land of *Ross's* heirs, where *John Young* now lives; all which grain in the ground shall be and remain bound for the payment of the said sum of two hundred dollars and interest; the said *Hayden* is to take care of said grain, keep the same under good fence, and from being destroyed by horses and other cattle, and cut and haul and thrash the same; and the said *Welsh* shall have his money out of the price thereof, which shall be at his direction, and under his controul until he is paid, and so soon as he is paid, then this article to be void and of none effect.

" Witness our hands and seals the day and year aforesaid."

Signed,          *Richard Hayden*,  [SEAL.]<br>
                                  *Jacob Welsh*.   [SEAL.]

Witness,      *John Flanagan.*

On the 14th September, 1825, *Richard Hayden* died: the grain on the farm on which *Hayden* and his cropper lived, was cut and remained on the farm till he died, when *Jacob Bekey*, his executor, took possession of it, and sold it. The grain on the farm on which *Young* lived, remained in his possession till after the death of *Hayden*, when it was thrashed, and by him delivered to *Bekey*, who sold the same. The proceeds of the sale of the said grain in the hands of *Jacob Bekey*, is more than sufficient to pay the claim of the plaintiff, *Jacob Welsh*, if he is entitled to a preference. The estate of said *Hayden* is insufficient for the payment of all his debts.

Upon this statement of facts, the court below, (*Thompson* president,) entered judgment for the defendant, which was assigned for error in this court, and argued by

*Chambers*, for the plaintiff in error, who said, that the only question was whether the transfer was void, in consequence of the possession of the grain not having been delivered to *Jacob Welsh*, at the time of the assignment.

The transfer was good to effectuate the intention of the parties.

1st. Because the agreement did not contemplate an immediate delivery of the thing transferred.

Whether the possession of goods remaining in the hands of the vendor is a badge of fraud, depends upon the intention of the parties. 1 *Dane's Ab. of Amer. Law*, 659. There must be fraudulent or deceptive purposes in view, in order to make it void. *Ib.* 639. In the case of an absolute sale, the possession remaining in the vendor

(Welsh *v.* Bekey, executor of Hayden.)

is inconsistent with the agreement, but, in this case, the possession remaining in the assignor was consistent with the agreement, and therefore valid. *Clow* v. *Woods*, 5 *Serg. & Rawle*, 276. 2 *Stark. Ev.* 616. *Barrow* v. *Paxton*, 5 *Johns. Rep.* 258.

2d. Inasmuch as the grain was not susceptible of delivery at the time the transfer was executed, the transaction was not fraudulent, nor the transfer void under the statute of 13 *Eliz. chap.* 5 : but a reasonable time after harvest should be allowed for the delivery, which was not allowed in consequence of the death of *Hayden*, on the 14th September, 1825. In the cases of vessels at sea being transferred, a reasonable time is allowed after their arrival for delivery. *Morgan* v. *Biddle*, 1 *Yeates*, 3. When *Hayden* died, *Welsh* was entitled to the lease of the land, or his money out of it, and therefore, when *Bekey* received the money, he received it for the use of *Welsh*, and should account for it in this action.

3d. The possession of the grain never was in *Hayden*, but in his tenants, and therefore the want of a delivery at the time of transfer to *Welsh*, was not even *prima facia* evidence of fraud; for creditors in that case would, in the exercise of a reasonable prudence, inquire further about the ownership, than the mere appearance of possession.

4th. This transfer is sustainable, on the ground that it was the assignment of a rent, and therefore of a chose in action. In this case, the farm was leased on the shares, and that share was a rent for which the landlord might destrain. *Dorsey* v. *Jackman*, 1 *Serg. & Rawle*, 52. MS. *case, decided at Sunbury, June* 7, 1829.

5th. Although this transfer may have been void against creditors, yet it is conclusive against *Hayden*, his heirs, executors and administrators, and the defendant being his executor, cannot sustain this defence. It does not appear by the special verdict that there is any creditor who has qualified himself to make this defence; the validity of the transfer could not be questioned by a creditor, until he has obtained a judgment and execution for his debt. 3. *Amer. Dig.* 309. Cited, *Gilpin* v. *Davis.* 2 *Bibb.* 416. *Kentucky Rep.*

*Crawford*, for defendant in error.—It does not appear by the agreement, that the possession of the grain was not to be delivered; on the contrary, a fair construction of it is, that *Welsh* was, at its execution, to be placed in *Hayden's* situation respecting it, and he was to have merely a supervision over the grain, that it might be preserved for *Welsh*.

The possession might, in some degree have been delivered; the agreement might have been recorded; notice might have been given to the tenant that he was to consider *Welsh* as his landlord, as to this grain. Two months elapsed from the harvest of this grain, till the death of *Hayden*, within which time, possession of the grain, in the sheaf or in the bushel, might have been delivered.

(Welsh *v*. Bekey, executor of Hayden.)

The transaction was, in its character deceptive. *Hayden* resided on the land, and after the execution of this agreement, may have derived credit from the public upon the faith of this grain, which *appeared* to be his. The transaction is open to all the objections which exist against the validity of a transfer of personal property, without a delivery of possession.

The agreement is not an assignment of rent, nor was it intended by the parties to have operated as such. It is nothing more or less than a mortgage of the grain, and so designed; for according to its own terms, it was to be void upon the re-payment of the money.

The case of *Cloe* v. *Woods*, 5 *Serg. & Rawle*, 276, seems to be conclusively in point with this case. The delivery of possession is as necessary to the validity of a mortgage of goods, as of an absolute sale. *Cunningham* v. *Neville*, 10 *Serg. & Rawle*, 22, where it is also said that the case of *Barrow* v. *Paxton, in* 5 *Johns. Rep.* 258, is not sound law. It is a part of the case that the estate of *Hayden* is insolvent: this is therefore virtually a contest with the creditors.

*Chambers*, in reply.—The statute of the 13*th Elizabeth*, provides against *contrivances* to defraud, delay or deceive creditors; and therefore if the whole transaction shews that the parties had *no intention* to defraud or deceive, it is a valid transfer. 2 *Stra. Ev.* 621.

The opinion of the court was delivered by

GIBSON, C. J.—This transaction was evidently intended to be a mortgage of personal property, which, when the mortgagor retains the possession, or the other *indicia* of ownership, was declared in *Clow* v. *Woods*, to be fraudulent, as in the case of an absolute sale. That the rule which was recognized in that case, rather than established, for the first time, ought not to be relaxed on grounds of policy, is proved by the fact, that a sham sale, to elude creditors, has become the common and successful instrument of fraud; so much so, indeed, as to have nearly superceded in practice, the old abuse of the remedy under the insolvent laws. That rule is, however, founded, not merely in policy, but early established authority. In a leading case, which is frequently appealed to, (*Ryall* v. *Rolle*, 1 *Wils. Rep.* 260.) a partner in a brewery mortgaged his share in the brewhouse, *utensils and debts*, but continued to carry on the business as before; and it was held that a mortgagee of goods or choses in action, being the true owner, ought to take actual possession, as far as he can, of the goods, or the key of the warehouse, and of the muniments by which the choses in action may be recovered. How closely that case resembles this, will be perceived. *Hayden* assigns to *Welsh* the moiety of a crop growing on the farm where he resides, and the moiety of another crop on the farm where his tenant resides, to remain bound for the re-payment of two hundred dollars; and it is stipulated " that *Hayden* shall take care of the crop while growing, cut, thrash and carry it away, under the

(Welsh *v.* Bekey, executor of Hayden.)

direction and control of *Welsh*, who is to have his money out of the *price of it.*" The argument that the assignment is of a rent in the nature of chose in action, is without force, granting the fact to be so; because the assignment of a chose in action itself, is subject to the rule which requires a transfer of the possession. Did the parties leave undone that which might serve to indicate the actual owner? Instead of substituting the mortgagee for the mortgagor, and providing for a transfer of the possession as soon as it might be delivered, consistently with the bargain with the cropper, it was expressly stipulated that the mortgagor should retain the crop till it should be sold by the direction of the mortgagee, who was to have possession of nothing but the proceeds of it. Taking care of grain, growing, reaping, thrashing and selling it, include all the notorious acts of ownership that are ordinarily exercised in relation to this species of property; while the act of giving directions, is a matter usually known only to the parties. There was not one open and notorious act to be done by *Welsh*, that would indicate him to be the owner, or that would be inconsistent with the apparent title of *Hayden*. The fact is, the parties undertook to mortgage the property, just as if it were a tract of land; and, notwithstanding the admitted purity of their intentions, we are bound to say, the transaction cannot be supported. In reply to the argument that the contract, although fraudulent as to third persons, is good between the parties, it is proper to remark that the contest with the executor is virtually a contest with the creditors, it being expressly made a part of the case that the estate is insolvent.

Judgment affirmed.