STEWART & BROWN v. SMITH, SHERIFF.

1. **Mortgage of Chattels:** WHERE RECORDED: POSSESSION: NOTICE. Where the mortgagee of chattels retains possession thereof, the mortgage, in order that it may be notice to third parties, and take precedence of a subsequent attachment, must be filed for record in the county where the *holder of the property resides.* Code, § 1923. Filing for record in the county where the property is located, is not sufficient. But when the attaching officer finds the property in the possession of the mortgagee's agent, he is bound to take notice of the right by which such agent holds possession, regardless of the filing of the mortgage.

2. **Jury:** BOUND BY INSTRUCTIONS. The jury is bound to follow the instructions of the court, whether they are right or wrong.

3. **Mortgage of Chattels:** ACTUAL NOTICE OF: TIME OF RECEIVING. An officer about to levy an attachment upon personal property is bound by actual notice of a prior mortgage upon such property, whether he receives such notice before or after the writ is placed in his hands.

*Appeal from Benton Circuit Court.*

WEDNESDAY, DECEMBER 13.

IN November, 1881, G. F. Moulton was engaged in the business of buying and shipping grain. He owned a grain elevator, office and scales, at Mt. Auburn, in Benton county, which were situated on land belonging to the B., C. R. & N. Railroad Company. He also owned at the same place three cribs of corn. He carried on a branch of his business at Garrison, in Benton county, where he had one crib of corn. His residence and post-office address was at La Porte, in Black Hawk county. The plaintiffs, Stewart & Brown, were

doing business in Chicago, and Moulton transacted his business at that place through them, and became indebted to them in a considerable sum for advances made to him. On the 9th day of November, 1881, Moulton executed a chattel mortgage to the plaintiffs upon the elevator, office and scales at Mt. Auburn, and filed it for record with the recorder of Benton county, on the morning of the next day. On the 12th day of the same month, he executed to plaintiffs another mortgage upon the cribs at Mt. Auburn, and the crib at Garrison, and filed the same for record with said recorder, on the evening of that day.

The defendant is sheriff of Benton county, and by virtue of certain attachments issued from the District Court of Black Hawk county, he levied upon the crib of corn at Garrison, at 12 o'clock and 5 minutes, on the morning of November 14, 1881, and upon the elevator, scales, office and cribs at Garrison, at 1 o'clock on the same day. The plaintiffs commenced this action in replevin for the property, and the controversy involves the question whether the claim of the plaintiffs to the property is superior to the rights of the attaching creditors.

There was a trial by jury, and a verdict and judgment for defendant for all the property, and plaintiffs appeal.

*Mills & Keeler* and *Gilchrist & Haines*, for appellant.

*Boies & Couch* and *Nichols & Burnham* and *Chas. A. Bishop*, for appellee.

ROTHROCK, J.—I. There is no controversy as to the validity of the indebtedness of Moulton to the plaintiffs nor to the attaching creditors. The only question is as to which of the contending parties are entitled, by priority of right, to the property. This involves a number of questions which we will proceed to determine in the order in which they seem naturally to arise.

It will be observed that the mortgages were filed for record

before the attachments were levied. And here we may say, that, if the mortgages were filed in the recorder's office of the proper county, there can be no question but that this consti-tuted a delivery to the plaintiffs and operated as constructive notice to the creditors. The evidence shows clearly, conclu-sively and without conflict, that the mortgages were made in pursuance of a previous agreement that Moulton should mort-gage the property to the plaintiffs to secure an indebtedness to them, and it is immaterial whether he executed one or two mortgages. It is also shown, without conflict, that the plaint-iffs accepted the mortgage made on the 9th of November, be-fore any attachments were issued.

The important question in the case is whether the mort-gages were filed in the proper county, and whether under the facts of the case any record of them was neces-sary in any county to render them valid as against attaching creditors.

1. MORTGAGE of chattels: where re-corded: pos-session: notice.

Section 1923 of the Code is as follows:—

"No sale or mortgage of personal property, *where the ven-dor or mortgagor retains actual possession thereof*, is valid against existing creditors or subsequent purchasers, without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of the county *where the holder of property resides.*"

Counsel for appellants contend that no record was necessary, because Moulton did not have or retain the actual possession of the property at the time of the execution of the mortgages, nor afterwards, but that such actual possession was held by third persons. Here we think that appellant is in error. It is true, the evidence shows that one Wolf was employed by Moulton at Mt. Auburn, but that he had any interest in the property or custody or possession thereof, more than that of a mere employe, does not appear. By the very terms of the mortgages, under which the plaintiffs claim, the possession was left in Moulton. It was admitted on the trial that the corn at

Garrison was in the sole charge of an employe of Moulton, but always subject to Moulton's direction and control.

Taking all the evidence together, we do not think plaintiffs have shown that the relation of Wolf was different, from that of the employe at Garrison. The cases cited by counsel for appellant do not appear to us to be in point. These employes were not bailees, nor agents with authority over the property. It is not shown that either of them had any rights therein. They were, so far as appears, the mere servants of Moulton. We think the court did not err in instructing the jury that, under the pleadings and evidence, Moulton was in the actual possession of the mortgaged property, and that the filing of the same for record in Benton county did not impart constructive notice to the attaching creditors, because he did not reside in Benton county.

II. As has already been stated, the levy of the attachments was made upon the property at Mt. Auburn, on the 14th day, of November, at one o'clock, P. M. The evidence shows that, on the morning of that day, and before the levy was made, one of the plaintiffs and George Douglas went to Mt. Auburn where they met Moulton, and the possession of the mortgaged property, which was there situated, was formally delivered to the plaintiffs in pursuance of the terms of the mortgages. The possession was accepted by the plaintiffs, and Wolf, who had been in the employ of Moulton, was directed by the parties to hold the property for the plaintiffs and subject to their orders. This Wolf agreed to do, and in pursuance thereof locked up the elevator, nailed up some boards on the cribs, and no business was done after that. All of these persons distinctly testified to these facts upon the trial. There was no evidence in conflict therewith, and the witnesses were in no manner impeached This was as complete a change of the possession of the property as it was reasonably capable of. Wolf was no longer an employe of Moulton in the custody of the property. From the time of the surrender thereof by Moulton, Wolf held it for the plaintiffs, and when the

sheriff found Wolf in possession, he was bound to take notice of his right of possession. So far, then, as that property was involved, the jury should have found for the plaintiffs. There was no warrant in the evidence for any other finding, and the verdict cannot be approved, without holding that a jury may return a verdict without regard to the evidence.

III. The levy of the attachments was made on the corn at Garrison before the transfer of the possession of the property at Mt. Auburn, and there was no change in the possession of the former. But the court instructed the jury, in its third instruction, that a delivery of the mortgages to the recorder of Benton county for record, was a delivery to the plaintiffs, if the mortgages were made in pursuance of a previous agreement to do so, and to have the same recorded. We have found that such an agreement was made. Now it was the duty of the jury to follow this instruction, whether right or wrong, and find that the mortgages were actually delivered. If they had done so, they would have found that the mortgage executed on the 12th of November was delivered, before the levy of the attachments was made on the property at Garrison.

*2. JURY: bound by instruction.*

The court further instructed the jury that, if the defendants had actual notice of the mortgages, or such notice of the same as would be sufficient to put an ordinarily reasonable or prudent man upon inquiry—"and such notice to or knowledge by an officer or deputy sheriff, after he has received the writ of attachment, and before he has made the levy thereunder, is notice to the creditor in whose favor the writ was issued"— then, if the mortgages had been delivered to the plaintiffs, they were valid as against the defendant.

We think that part of the instruction which limits the notice of the officer to the time after receiving the writ of attachment should not have been given. In *Young v. Walker*, 12 New Hampshire, 502, the officer acquired the knowledge which, it was held, bound the second attaching creditor, while he was serving a former writ, and before he held a second writ for service. In the

*3. MORTGAGE of chattels: actual notice of: time of receiving.*

case at bar, the evidence shows that the deputy sheriff, who levied the attachments, went to the recorder and examined the last mortgage before he made the levy. He was there for the very purpose of ascertaining what levies were on this property, and presumably with a view to making a levy. The recorder testified that he handed the mortgage to the deputy sheriff, and that he (the deputy) "read what was in the mortgage." The deputy testified on that subject as follows: "I didn't read it through, that is the whole details; I looked at the description, perhaps, what it covered." In view of this positive evidence of notice of the contents of the mortgage, we think the jury must have been misled by the instruction of the court that they must find that the notice was acquired after the writ came into the officer's hands. Although the evidence tends strongly to show that the deputy sheriff then had the first writ, yet it is not conclusive.

For the errors above pointed out the judgment must be

REVERSED.