CUMA BLACKMAN, Administratrix of the Estate of C. R. BLACKMAN, and J. M. REESE, Administrator of the Estate of CHAS. R. BLACKMAN, Deceased, v. BAXTER, REED & COMPANY and CHAS. S. MACOMBER, Appellants.

**Chattel mortgages:** RECORDING: INVALIDITY AS AGAINST CREDITORS: RIGHT OF ADMINISTRATOR TO CONTEST. The property of a decedent is bound for the payment of his debts in the order provided by statute, and an administrator has such an interest in the property, as trustee for the creditors, that he may contest the validity of a chattel mortgage executed by the decedent while insolvent, where neither possession was taken nor the mortgage recorded until after decedent's death. McClain and Weaver, JJ., dissenting. '

*Appeal from Ida District Court.*— HON. S. M. ELWOOD, Judge.

TUESDAY, JUNE 14, 1904.

ON April 12, 1901, at about 11 o'clock p. m., Chas. R. Blackman executed a chattel mortgage to Baxter, Reed & Co. on his stock of groceries and book accounts to secure the payment of a valid indebtedness of $5,000. Immediately thereafter Reed, a member of that firm, with two or three others, entered the store of Blackman, who said, " Here is the stock; it is yours." Thereupon Reed looked over it with a view of estimating its value, but touched nothing. After some conversation he advised Blackman to go home. The response came, " What will I tell my wife ? " and that he

must think matters over first.  He then requested permission to stay a while, and the others left.  The store was opened about 5:30 o'clock the next morning, and about 7 o'clock Reed took possession.  A half hour later the dead body of Blackman was found in the cellar.  It was stipulated that death occurred in the early morning of the 13th, and that deceased at that time was insolvent.  The mortgage was recorded in the afternoon of the same day.  The parties stipulated that the value of the property covered thereby was $3,281.75.  Cuma Blackman was appointed and qualified administratrix of the estate April 22, 1901.  Upon the application of the creditors, whose claims exceed the above amount, the court, on the 19th of March, 1901, authorized them, in the name of the administratrix, to sue Baxter, Reed & Co. for the value of the mortgaged property, and this action was begun.  Issue was joined, and after the introduction of all the evidence verdict was directed for Macomber and against Baxter, Reed & Co., and judgment entered thereon.  Baxter, Reed & Co., appeal.—*Affirmed.*

*Chas. S. Macomber,* for appellant.

*Hastings & Brasted* and *Hutchinson & Jacobs,* for appellees.

LADD, J.— The mortgage on the property in controversy was not recorded prior to the death of the mortgagor, nor had the mortgagee taken possession under the mortgage.  True, Reed, a member of the defendant firm, looked over the stock, without touching anything.  He may have intended to take possession, but nothing was done indicative of ownership.  Blackman was left in the store without surrendering his keys.  Possession was taken, however, the next morning, after the mortgagor's death, and the mortgage recorded.  But what was then done could have no effect on the rights of the parties, as, in any event, the mortgagor had ceased to retain possession.  The appellee con-

cedes the validity of the mortgage as between the mortgagee and deceased or his heirs, but contends that, owing to his insolvency, it is void as to creditors under the terms of the recording act. Our statute provides that: "No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers, without notice, unless a written instrument conveying the same is executed, acknowledged like the conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides." Section 2906, Code.

The mere fact of being a creditor will not entitle one to claim the property as against such a mortgage. To secure the benefit of the statute, he must have some right to or interest in or lien on the property itself. Before he may contest its validity, his debt must be fastened upon the debtor's property covered by the mortgage by law, judicial process, or in some other way. Such is the uniform holding of the courts, and the serious question in the case is whether the administratrix, in so far as she represents the creditors, had such an interest in the mortgaged property as to entitle her to contest the validity of the mortgage. Regardless of when appointed, her title to the property, such as it was, related back to the instant of the mortgagor's death. *Haynes v. Harris,* 33 Iowa, 516; *Christie v. Ry.,* 104 Iowa, 710. Thereafter the creditors were powerless to obtain any relief directly, but must of necessity work out the collection of their claims through the administratrix. It was her duty to take possession of all the property of the decedent, and out of such property the creditors had the right to have their claims satisfied before the distribution to heirs or legatees. Section 3348, Code. The executor or administrator takes title to the property not in his own right, but as trustee for the benefit of those entitled to it, and we have held that the right of the heir to his distributive share in the estate vests instanter upon the death of decedent. Distribution

gives no new title.. It merely ascertains the property to which the title attaches. *Moore v. Gordon,* 24 Iowa, 158. But the property and the heir's interest therein is burdened by the claims of creditors, and until these have been discharged he is neither entitled to distribution nor to exercise any control over the property. *Phinney v. Warren,* 52 Iowa, 332; *Haynes v. Harris,* 33 Iowa, 516; *Stahl v. Brown,* 72 Iowa, 720. The interest of the heirs in an insolvent estate is purely technical. It is held by the administrator solely for the discharge of the debts of the deceased. This was recognized in *Cooley v. Brown,* 30 Iowa, 470, where, in holding that an administrator might maintain an action to set aside the conveyance of deceased because voluntary or fraudulent, the court said:

Ordinarily, it must be true that an administrator can maintain only such actions at law as the intestate might if living. This must be invariably so in all actions for the enforcement of rights grounded upon the inheritance. So far as the administrator represents the heirs and the actions brought by him are to secure their rights and interests, he must be limited to such as the decedent himself might have maintained. But under the general statutes relating to the distribution of estates and the duties of administrators the latter are charged with certain trusts in favor of the creditors of the estate. They are required to collect the assets, and to pay them over to the estate creditors. Whatever ought to be applied to the payment of debts ought to be recoverable by the administrator, representing the rights and interests of the creditors.

These debts existed at the time of the intestate's death. Thereafter they could be enforced in no other way than by securing their allowance against the administratrix. Even when allowed, the claims are not liens on the property of the estate, which is chargeable, (1) with the expenses of the last sickness and funeral; (2) allowance to widow and children for support; (3) debts entitled to preference under the laws of the United States; (4) public rents and taxes; (5) claims

presented within six months after the first publication of the notice of the appointment of the executor; (6) all other debts; and (7) legacies and distributive shares, if any. Sections 3347, 3348, Code. The property of the estate, however, is bound for the payment of the debts as far as it will go. If not enough for this purpose, it is to be applied to the respective classes in the order mentioned, and, if not enough for a particular class, dividends are to be declared and paid. Section 3353, Code. Can it be said, then, that the creditors have no interest in the property of the deceased when entitled, under these statutes, to all its proceeds? Their fundamental purpose is the appropriation of the property of deceased irrevocably to the payment of his debts. True, the creditor acquires no lien such as is obtained by the levy of a writ of attachment or execution. The statute does not declare such a lien essential. A levy is sufficient merely because it creates such a right to the property as that the plaintiff may resort to the courts for its protection. The lien created by the levy of a writ of attachment or execution, as distinguished from some other right to or interest in the property mortgaged, has never been held by this court to be essential before assailing an instrument as invalid because unrecorded. A right to the property obtained in any other way is quite as effective. Thus, in *Graham Button Co. v. Spielmann*, 50 N. J. Eq. 120 (24 Atl. 571), the court held that the moment a corporation is declared insolvent, and a receiver appointed to wind up its affairs, the legal effect of the statutes regulating such matters was to fasten the debts of the corporation upon its property; saying:

From that time forth its property is by law appropriated exclusively and irrevocably to the payment of its debts. Power is conferred upon its receiver to take possession of all its property and convert it into money, to the end that the money thus obtained may be distributed among its creditors. No other application or disposition can be made of the money realized from the property. It must be paid

to creditors, and in distributing it among unsecured creditors the statutory direction is that they must be paid in proportion to their respective debts.   By an enactment expressed in this form, the debts of an insolvent corporation are, in my judgment, just as plainly and effectually fastened on its property as they would have been had the statute said in direct terms that, when a corporation is adjudged to be insolvent, its property shall at once become liable for the payment of its debts.   A legislative declaration in the form just stated has been held sufficient to fasten the debt of a creditor at large on the lands of his deceased debtor.

*In re Wilcox & Howe Co.,* 70 Conn. 220 (39 Atl. Rep. 163), the court, in speaking of the right of a receiver of an insolvent corporation to insist on the invalidity of certain conditional contracts, void as against creditors, but good as against the corporation, said:

By the appointment of a receiver the rights of creditors to attach or levy on such property are suspended.   The law thus disables the creditors from interfering with the property, or from in any way appropriating it for their sole benefit; but in so doing it does not lessen their rights with respect to such property, nor does it destroy them; it merely provides for their protection and enforcement in another way.   And whenever the law thus disables creditors from helping themselves, whether by proceedings in bankruptcy or insolvency, or by the appointment of a receiver or otherwise, it provides for the enforcement for whatever rights they may possess against the property of the debtor, through the instrumentality of its agent, the trustee, assignee, or receiver.   For the purpose of enforcing any such right which the creditor could have enforced for his sole advantage, and for the purpose of holding or taking any property which a creditor could hold or take by law, or for recovering back any property of which a creditor could avail himself in payment of his debt, the trustee, assignee, or receiver is, in effect, the creditor.

*Farmers' L. & T. Co. v. Minneapolis E. & M. Works,* 35 Minn. 543 (29 N. W. 349).   It is not perceived why the same rule is not applicable to an assignee in so far as

he represents the creditors of the assignor. By transferring his property, the latter puts it beyond the reach of his creditors through a levy of a writ of attachment or execution. Does the debtor, by so doing, cut off all right to defeat a mortgage void as to creditors by reason of not being recorded? Many authorities sustain the right of the assignee to avoid a chattel mortgage because of failure to comply with the provisions of the recording act. *First National Bank v. Salyer,* 4 Okl. 408 (50 Pac. 77); *Withrow v. Citizens' Bank,* 55 Kan. 378 (40 P̂ac. 639); *Putnam v. Reynolds,* 44 Mich. 113 (6 N. W. 198); *Roe v. Meding,* 53 N. J. Eq. 350 (33 Atl. 394). The point has never been decided by this court. In *Schaller v. Wright,* 70 Iowa, 667, the assignee was held to be trustee for the creditors, and as such entitled to maintain an action to set aside the fraudulent conveyance of the assignor; the court saying: " While, therefore, the husband [assignor] could not set aside the deed and claim the property, the trustee of the creditors, chosen by him, whose action is recognized and controlled by law, who is made an instrument by the law for awarding remedies to the creditors, is not subject to the rules and doctrines to be applied between the fraudulent grantor and grantee." See, also, *Mehlhop v. Ellsworth,* 95 Iowa, 657. All held in *Meyer v. Evans,* 66 Iowa, 179, was that the assignee was not a purchaser for value. The decision in *Warner v. Jameson,* 52 Iowa, 70, rests on the finding that the assignee, as trustee for the creditor, took the property with notice of the unrecorded mortgage. *Prouty v. Clark,* 73 Iowa, 55. *In re Wise,* 121 Iowa, 359, the only point raised was that the assignee should be protected as a subsequent purchaser, and even that issue was not pleaded. The assignee is not a purchaser for value, because he has parted with nothing. As said, we have never decided the question, and do not intend to do so now. It is merely adverted to because of the persuasive character of the decisions cited. There are several cases holding that the administrator, as the represen-

tative of the creditors of an insolvent estate, occupies the same position as the creditor in respect to a mortgage void because not recorded. *First National Bank v. Ludvigsen,* 8 Wyo. 230 (56 Pac. 994, 57 Pac. 934, 80 Am. St. Rep. 928); *Currie v. Knight,* 34 N. J. Eq. 485; *Becker v. Anderson,* 11 Neb. 493 (9 N. W. 640); *Kilbourne v. Fay,* 29 Ohio St. 264 (23 Am. Rep. 741); *Welsh v. Bekey,* 1 Pen. & W. 57. See *Shears v. Rogers,* 3 Bom. & Ad. 362. In the course of the opinion in *Kilbourne v. Fay* the court said:

The creditors of a mortgagor do not.cease at his death, and, so long as they continue to be such creditors, such mortgage is void as against them. By relation the executor or administrator became trustee for the creditors from the death of the mortgagor.

In First National Bank v. Ludvigsen, the court, after an exhaustive review of the authorities, observed that:

In none of the cases cited involving the right of an assignee or representative of an insolvent estate of decedent was the fact deemed material that the creditors had not secured a specific lien by judgment or process. There could be no specific lien because by the operation of law the creditors were denied a remedy of that character; but their rights were provided for in other ways just as completely, and under forms of law just as legal, with the exception that every creditor stood upon the same footing, and no individual creditor could, by the exercise of diligence, appropriate the property to his sole advantage. * * * . The cases thus maintaining the right of an assignee, receiver, and executor or administrator of an insolvent estate, as representing the general creditors, to avoid in their interest a fraudulent or void chattel mortgage, we think correctly present the law upon the question. The doctrine is supported by sound reason, and comports with our ideas of justice in the premises. The mortgage is without validity as to the creditors. As against them it is no mortgage, and represents no interest in the property.

In *Summer v. McKee,* 89 Ill. 127, cited by appellant, the estate does not appear to have been insolvent. *Mayer*

v. *Myers,* 129 Ind. 366 (27 N. E. 740), follows *Evans v. Pence,* 78 Ind. 439, which was based on a statute requiring mortgages of personalty existing in the lifetime of decedents to be paid, but the dissent in *Kilbourne v. Fay, supra,* and like views in Jones on Chattel Mortgages, was therein approved. The fundamental error in both is the assumption that the recording act contemplates a specific lien before a creditor may assail an unrecorded mortgage as void. As already noted, it is essential that the party attacking that instrument have some right or interest in the property to be protected by the court. Without this he is a mere intermeddler. The nature of that right or interest, if valuable, is not important. That a person has but a slight interest in assets, or is entitled to but a small moiety of property in controversy, has never been regarded as a sufficient ground for denying relief. It should be added that the Supreme Court of Nebraska does not seem to have consistently followed the decision of *Becker v. Anderson, supra.* See *Marsh v. Burley,* 13 Neb. 261 (13 N. W. 279); *Housel v. Cremer,* 13 Neb. 298 (14 N. W. 398); *Lancaster County Bank v. Gillilan,* 49 Neb. 165 (68 N. W. 352); *Folsom v. Peru Plow & Implement Co.* (Neb.), 95 N. W. 635.

Undoubtedly, the administrator, before assailing the mortgage as void, should prove the existence of creditors, as was held in the last of the above cases; but we do not concur in the view that the claims of the creditors must be allowed before the recording of the mortgage, in order to give the administrator standing to contest its enforcement. There can be no race between creditors for the assets of a dead man. After his demise neither the recording of an incumbrance nor the taking of possession can confer a preference. All rights are of necessity to be adjudicated as of the date of decedent's death, and, as in an insolvent estate the administrator takes the property for the benefit of the creditors, their interest in the assets relates back with his title and right of possession. Certainly the creditors ought not to suffer be-

cause of the delay incident to the course of probate procedure, without fault on their part. Had any of the creditors caused a writ of attachment or execution to be levied an instant before Blackman's death, the mortgage, as to them, if without notice, would have been void. After his death they were powerless to make such a levy. Are they to be deprived of the opportunity of assailing the mortgage by the debtor's death, and this through no fault of their own? Has death rendered a void mortgage valid? Certainly not. But it has changed the procedure. The administrator has taken title and possession, and, regardless of the date of appointment, that title and possession, according to the common law (and our statutes have not changed it in this respect), relate back to the time of dissolution. In an insolvent estate that title and possession is in the trustee for the benefit of creditors. Their interest in the property attaches the instant of the decedent's death, and, as representing them, the administrator may insist upon the invalidity of the unrecorded mortgage. The result is equitable, for it avoids clandestine preferences, and distributes the assets of the insolvent estate among all creditors alike. It is not inconsistent with any previous decision of this court.

In view of our conclusion, other errors argued, if conceded, were without prejudice.— *Affirmed.*

McCLAIN, J. (dissenting).— My inability to agree with the views expressed by the majority arises from the belief that in deciding this difficult and novel question the majority have taken a view of the effect of failing to record a chattel mortgage which is inconsistent with the view which has been adopted by this court and become familiar to the profession in this State. The conclusion of the majority in this case is summed up in a negative answer to the question, " Has death rendered a void mortgage valid?" The entire opinion is predicated on the theory that retention of possession by the mortgagor without recording renders the instru-

ment void, and that it only becomes a valid mortgage, as against general creditors, when the mortgagor divests himself of possession, or places the mortgage on record. On the contrary, as I understand our decisions, an unrecorded chattel mortgage is valid as between the parties and as to all other persons except " existing creditors or subsequent purchasers without notice;" and the term " existing creditors " has been held to apply in case of general creditors only to those who have acquired a lien upon the property arising by attachment or execution levy without notice actual or constructive, or information on the part of the creditor himself or the officer making the levy, prior to the time when the levy is made, of the existence of the mortgage. *Allen v. McCalla,* 25 Iowa, 464; *Stewart v. Smith,* 60 Iowa, 275; *Bacon v. Thompson,* 60 Iowa, 284; *Aultman & Taylor Mach. Co. v. Kennedy,* 114 Iowa, 444.

The term " existing creditors " has also been construed to include creditors whose claims against the mortgagor are acquired after the execution of the mortgage, and who levy before change of possession or recording, and without notice. *Fox v. Edwards,* 38 Iowa, 215; *McAfee v. Busby,* 69 Iowa, 328; *Goll & Frank Co. v. Miller,* 87 Iowa, 426. A subsequent creditor who has extended credit without notice, actual or constructive, of the unrecorded mortgage, is not protected by the statute, unless he acquires a lien by levy without such notice. *Kern v. Wilson,* 82 Iowa, 407. Of course, a mortgage can be actually fraudulent as to either existing or subsequent creditors, but in this respect the fact of recording or change of possession is not controlling, although an agreement to withhold from record or a failure to record within a reasonable time may be considered as tending to show the fraudulent intent, where the mortgagee does not take possession. *Goll & Frank Co. v. Miller,* 87 Iowa, 426; *Falker v. Linehan,* 88 Iowa, 641; *Spencer Co. v. Papach,* 103 Iowa, 513; *Garner v. Fry,* 104 Iowa, 515. But while in some States retention of possession or failure to record is regarded

as furnishing *prima facie,* or even conclusive, evidence of a fraudulent intent, it is not so regarded in this State. *Torbert v. Hayden,* 11 Iowa, 435; *Wilhelmi v. Leonard,* 13 Iowa, 330; *Hughes v. Cory,* 20 Iowa, 399. In other words, in this State the invalidity arising from retention of possession by the mortgagor without recording is a wholly distinct and separate matter from the invalidity resulting from an actually fraudulent purpose participated in by the mortgagee. Here is the fundamental difficulty which I find with the majority opinion.

The distinction between these two radically different grounds of invalidity is treated as one of procedure merely. The majority treat the doctrine that the creditor can attack the mortgage for fraud only when he has so far pursued his legal remedy as to recover a judgment against the mortgagor, as though it applied also to mortgages invalid under the statute for failure to record; and they find in this doctrine an explanation of the construction which has been given to the term " existing creditors " found in the statute. In other words, they assume that a pre-existing creditor, who has been in no way injured by a failure to record, because he has not parted with his money on account of want of notice of the instrument which affects his debtor's capacity to pay his debts, may nevertheless, after getting judgment for such mortgage, have it set aside as fraudulent — that is, actually fraudulent — even though before he levies he has acquired notice of such mortgage. This is not what the majority say, but it is the necessary and logical deduction from the reasoning employed; for they say that, as the creditors in this case were precluded by the death of Blackman from pursuing their legal remedies as against him, they are entitled, through the administratrix, to procure priority over the mortgagee, although there is not the slightest evidence of any actual intent as between the mortgagor and mortgagee to defraud general creditors. I accede fully to the proposition that an administrator or assignee for the

benefit of creditors may attack a mortgage given by the decedent or the insolvent on the ground of fraud, but I cannot accede to the conclusion that the administrator or assignee can attack a chattel mortgage for failure to record, where no actual fraud is shown, and where the general creditors, whom the administrator or assignee represents, are not within the classes of persons protected by the recording acts.

There is said to be much confusion among the authorities as to whether an administrator or assignee for the benefit of creditors may question the validity of a mortgage on the ground that it is fraudulent as to creditors but, in my opinion the confusion grows out of the difference of view in the different States with reference to the effect of failure to record; and while, no doubt, in those States where an unrecorded mortgage, the mortgagor retaining possession, is treated as fraudulent as a matter of law, the administrator or assignee may question its validity, I think it will be found that in the States where such mortgage is treated as valid, save in so far as other persons change their legal relations to the property without notice of such mortgage, the administrator or assignee is not deemed to be in a position to raise the question in behalf of mere general creditors. Thus, in *Stewart v. Platt,* 101 U. S. Rep. 731 (25 L. Ed. 816) — a case arising under the recording acts of New York — it is held that an assignee in bankruptcy representing general creditors has no higher rights as against an unrecorded mortgage than the bankrupt himself. On the other hand, in *People's Savings Bank v. Bates,* 120 U. S. Rep. 556 (7 Sup. Ct. 679, 30 L. Ed. 754) — a case arising under the laws of Michigan — the doctrine is recognized that a general creditor having levied an attachment may by a bill in equity contest the validity of an unrecorded mortgage; but this is predicated upon the rule recognized by the courts of Michigan that such a mortgage is fraudulent as against general creditors, and no doubt in the application of this rule an assignee for the benefit of creditors or the administrator of the deceased

·mortgagor representing general creditors could attack such· a mortgage, the creditors having been prevented by the assignment or the death of the mortgagor from putting themselves in a position to attack the mortgage for fraud.

The term " existing creditors " has been .the subject of consideration, and has acquired under our decisions a definite and well-recognized ·meaning.    It has been so construed as to exclude general pre-existing creditors who have not acquired a lien by attachment or execution levy before being affected with notice, either actual or constructive, of the execution of the mortgage, and to include subsequent creditors who have acquired such lien.    That some construction was necessary in order to determine the intention of the Legislature is plain, for it does not appear from the language whether the term " existing " has reference to the time when the mortgage was executed or the time when adverse rights which could be enforced in court accrued.    This court has adopted the latter of these two meanings, and I think that this construction has now become a rule of property, and should be controlling.    That this court, in construing ·the term " existing creditors," never had in mind any purpose of making that term equivalent to a creditor who has put himself or been put in a position simply to attack the mortgage for actual fraud as a fraudulent conveyance, is manifest from a consideration of the cases.    A creditor who has obtained a judgment at law may, .without going further, attack· a conveyance or mortgage for actual fraud; but it has never been suggested, and it would be clearly inconsistent with the views taken in cases in this court already cited, to hold that a judgment creditor, without securing a specific lien by attachment or execution levy, can defeat a chattel mortgage on the ground that it is unrecorded.    If he could do so, notice would be immaterial; for why should the fact · of notice be of any significance when a pre-existing creditor seeks to reach property which the debtor has attempted to put beyond his reach, not fraudulently, but as a matter of

fact by giving a mortgage thereon to a third person? On the other hand, I do not understand that merely to seize property by the levy of an attachment gives a general creditor the right to question the validity of a fraudulent conveyance. For that purpose the general creditor must go further than to levy the attachment. He must establish the existence of an indebtedness by securing a judgment, or show facts excusing him from doing so. It is true that the attaching creditor may cause property fraudulently conveyed or mortgaged to be levied on under his attachment, and when the grantee or mortgagee seeks to take it out of the hands of the officer by legal process on the ground that it was not subject to levy, he may contest the validity of the conveyance or mortgage under which the grantee claims; but I know of no authority in this State or elsewhere supporting the position that the attaching creditor, who has not secured a judgment at law, may maintain a bill in equity to set aside the conveyance as fraudulent.

My conclusion is that an unrecorded chattel mortgage, the mortgagor retaining possession, is invalid under the statute, and in the absence of any finding of a fraudulent purpose to delay or hinder creditors in the enforcement of their claims, only as against existing creditors or purchasers without notice, and that the term " existing creditors " means creditors who have acquired a lien upon the property by levying attachment or execution, and that an administrator representing general creditors does not have a right to the mortgaged property prior and superior to that of the mortgagee under the unrecorded mortgage. This conclusion, I think, is in harmony with the entire current of the decisions in this State as to the effect to be given to unrecorded chattel mortgages.

WEAVER, J., concurs in the dissent.