R. L. RAYBOURN, Administrator, et al., Appellants, v. W. O. CREGER, Administrator, et al., Appellees.

CHATTEL MORTGAGES: Recording—Recording After Death of Mort-
1. gagor—Effect. The recording of a chattel mortgage after the death of an insolvent mortgagor does not, as between the mortgagee and other creditors of the estate, give the mortgage any preferential standing over what it had prior to the recording.

**CHATTEL MORTGAGES:** Recording—Necessity—Actual Possession De-
2 fined. A mortgagor must be deemed in actual possession of the
mortgaged chattels when he has them on his own farm and in the
actual custody of his own servant, even though he (the mortgagor)
does not reside upon said premises.

Headnote 1:  24 C. J. p. 433.  Headnote 2:  11 C. J. p. 519.

*Appeal from Madison District Court.*—W. S. COOPER, Judge.

· NOVEMBER 22, 1927.

Action in equity, to establish chattel mortgage lien on pro-
ceeds of sale of personal property in the hands of administrator.
—*Affirmed.*

*C. E. Hamilton, R. E. Killmar,* and *O. M. Slaymaker,* for
appellants.

*Guiher & Guiher* and *Leo C. Percival,* for appellees.

KINDIG, J.—The controlling legal principle involved in this
litigation relates to the effect of failure to record the chattel
mortgage in question before the mortgagor's death, in a contro-
versy between the creditors of the decedent's estate and bene-
ficiaries of said written instrument.

Grace Raybourn was the sister of W. D. Bradshaw. When
both were living, Bradshaw became indebted to Grace in the
amount of $2,500, which was evidenced by two promissory notes,
one for $1,500, and the other for $1,000. Mrs.
Raybourn died before her brother, survived by
a husband, R. L. Raybourn, and two children,
Wilma Raybourn and Claude Jones (a son by
a former marriage), both minors. Said husband was appointed
administrator of his deceased wife's estate and guardian of the
minor child Wilma Raybourn, while F. H. Riggle was appointed
guardian of the minor child Claude Jones. On the afternoon of
February 25, 1926, said W. D. Bradshaw, who lived at Truro,
went by train to Osceola, consulted a lawyer concerning general
indebtedness, and finally decided to, and did, sign, execute, and
deliver to said attorney a chattel mortgage securing $1,666.67
(two thirds of the amount due the sister, equivalent to the sum

1. CHATTEL MORT-
GAGES: record-
ing: recording
after death of
mortgagor: ef-
fect.

belonging to said minor children, after deducting the husband's one third from the total), for the benefit of said Wilma Raybourn and Claude Jones. As security, said document named 85 head of hogs on mortgagor's farm, "where Mont Seams lives, in Madison County * * * he being my [grantor's] hired man * * *." Directing his legal adviser to record said paper, Mr. Bradshaw left the office, and committed suicide, dying in the early morning of February 26, 1926. Afterward, at 10 o'clock on the same day, the said mortgage was filed for record. In due time, W. O. Creger was appointed administrator of the estate of said Bradshaw. G. C. Cooley, W. H. King, and the Truro Savings Bank, interveners, filed claims with said last named administrator, as creditors. Then the administrators of the two estates concluded to sell said incumbered hogs, in order that the proceeds thereof might be delivered to said minors, as mortgagees. Accordingly, the sale was had, and the purchase price collected by said Creger, administrator. Frank Johnson, Isaac Fouche, Everly Freeman, Earl Seward, and Lyle Seward, defendants, were named such because they were the purchasers of said property. Transfer of said purchase money to the minors was objected to by said creditors on the theory of superior equities. Decision in the district court was in favor of the objectors, and the claimants appealed.

I. Assuming, without deciding, there was legal consideration for said mortgage, and delivery thereof has been properly made, it is our opinion that the district court was right, and acted in harmony and accordance with the rule established by us in the cases of *Blackman v. Baxter, Reed & Co.*, 125 Iowa 118, and *In re Estate of Blackman*, 143 Iowa 553. We said, in the first case cited:

"There can be no race between creditors for the assets of a dead man. After his demise, neither the recording of an incumbrance nor the taking of possession can confer a preference. All rights are, of necessity, to be adjudicated as of the date of decedent's death, and, as in an insolvent estate the administrator takes the property for the benefit of the creditors, their interest in the assets relates back with his title and right of possession. Certainly, the creditors ought not to suffer because of the delay incident to the course of probate procedure, without fault on their part. Had any of the creditors caused a writ of attachment or execution to be levied an instant before Blackman's

death, the mortgage, as to them, if without notice, would have been void. After his death, they were powerless to make such a levy. Are they to be deprived of the opportunity of assailing the mortgage by the debtor's death, and this through no fault of their own? Has death rendered a void mortgage valid? Certainly not. But it has changed the procedure. The administrator has taken title and possession, and, regardless of the date of appointment, that title and possession, according to the common law * * * relate back to the time of dissolution. In an insolvent estate, that title and possession is in the trustee for the benefit of creditors. Their interest in the property attaches the instant of the decedent's death; and, as representing them, the administrator may insist upon the invalidity of the unrecorded mortgage. The result is equitable, for it avoids clandestine preferences, and distributes the assets of the insolvent estate among all creditors alike.''

For supporting authorities, see *Currie v. Knight,* 34 N. J. Eq. 485; *Matter of Munson,* 70 Misc. Rep. 461 (128 N. Y. Supp. 1106); *Kilbourne v. Fay,* 29 Ohio St. 264; *Weed v. Standley,* 12 Fla. 166; *Hemley v. Harmon,* 103 Mo. App. 233 (77 S. W. 136). Bradshaw's estate was insolvent, and claims of interveners were allowed therein. That being true, their rights became fixed, as against the mortgagees' assertion under said unrecorded lien. Paramount equities to the disputed property, in view of the *Blackman* case, were in the creditors, because there was no actual notice or record of a superior ownership or interest at the time Bradshaw died. Equities of the parties in the premises are to be determined as of that time.

There is lack of merit in the assignment of error.

II. Appellants' contention further is that, even though the law be as above announced, yet, because the chattels in question were on a farm in charge of the said Mont Seams, a hired man,

2. CHATTEL MORT-
GAGES: record-
ing: necessity:
actual possession
defined.

working for monthly wages, possession was not in the mortgagor, and therefore recording was not necessary, under Section 10015, Code of 1924, relying on *King v. Wallace Bros.,* 78 Iowa 221; *Frank & Co. v. Levi & Co.,* 110 Iowa 267; *Dysart Sav. Bank v. Weinstein,* 152 Iowa 260; *Storm v. Roberts & Warner,* 54 Iowa 677; *Thomas v. Hillhouse,* 17 Iowa 67. While on the other hand, appellee argues that possession, under the circum-

stances, was actually in said Bradshaw at the determinative time. Controlling facts are: This deceased, at and prior to his death, owned a farm of 320 acres, a mile and a half from said town of his residence. Mr. Seams, the hired man, was placed on said land for the purpose of farming the same and feeding and caring for live stock, under the direction of said owner. Such arrangement did not constitute said employee a tenant, bailee, or an agent, with interest in or control over the property, but rather, the relationship was that of employee, charged with the duty of doing his employer's bidding; for at all times this servant was at the beck and call of his master, who was in the business of buying stock, and while so doing, habitually placed hogs on said grounds temporarily, to be removed therefrom whenever he chose, with the object of filling carload lots for shipping. Because of this, the animals in question were in the care of Mr. Seams, yet the said owner retained their custody, management, and possession, the same as if he had actually lived on the farm, rather than a short distance therefrom. It appears, therefore, that the authorities relied upon by appellants do not apply. Terms of the security agreement are to the effect that the grantor was in possession of said live stock on said real estate "where Mont Seams lives." This provision, together with the facts and circumstances before enumerated, is sufficient to constitute actual possession in Bradshaw, as required by said Code section. *Stewart & Brown v. Smith*, 60 Iowa 275.

So the judgment and decree of the district court is right, and is hereby affirmed.—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.