R. E. BEERY, Administrator, Appellee, v. BRIDGET GLYNN, Appellant.

No. 41416.

JUNE 24, 1932.

Percival & Wilkinson and C. A. Robbins, for appellee.

S. A. Hays, Jno. N. Hartley, and Daniel J. Gallery, for appellant.

KINDIG, J.—W. H. Glynn, an unmarried man, owned certain lands during his lifetime in Madison County near Cumming, where he lived and kept live stock. Mr. Glynn lived alone on what is known in the record as the Thomas Glynn farm. This farm apparently was owned by W. H. Glynn.

Bridget Glynn, the defendant-appellant, sister of W. H. Glynn, also lived on a farm in Madison County. The appellant's farm was near the home of W. H. Glynn. It appears that the appellant lived on the aforesaid farm with her invalid sister, Mary, and certain nephews and nieces.

Sometime in 1914 a judgment was obtained against W. H. Glynn by certain creditors. Likewise, it appears that sometime before his death, W. H. Glynn became indebted to his sister, the appellant. That indebtedness amounted to $2,500. Also other creditors held obligations against Glynn. On April 25, 1930, W. H. Glynn signed a promissory note, payable to appellant, in the sum of $2,500 on April 25, 1931. For the purpose of securing that note, Mr. Glynn also signed and acknowledged on the same date a chattel mortgage purporting to convey to appellant the following described personal property: Ten head of cows; five two-year-old steers; seven calves; three yearling steers; two yearling heifers; fifty sheep; three mules; two gray mares; twenty hogs; and other personal property. Thereafter, on April 27 of the same year, W. H. Glynn died, without having paid any of the foregoing debts. Following his death, R. E. Beery, the plaintiff and appellee, was appointed administrator of the W. H. Glynn estate. S. A. Hays for some reason was appointed a successor to R. E. Beery and is now acting as the administrator of the estate.

After her above-named note for $2,500 became due, the appellant, upon advice of counsel, foreclosed the chattel mortgage securing the same, and applied the net proceeds on her note. Subsequently the appellant filed a claim against her brother's estate for the balance due on the note. So, too, the other creditors above named likewise filed claims against the W. H. Glynn estate. The aforesaid foreclosure was by advertisement and sale. Then on April 20, 1931, the appellee as administrator of the W. H. Glynn estate commenced this action against appellant on the theory that the chattel mortgage above named was of no validity or effect, and consequently, by selling the personal property set forth therein, she wrongfully converted the same. Underlying appellee's cause of action are two theories: First, it is contended that the aforesaid note and chattel mortgage alleged to have been given to appellant by her brother, W. H. Glynn, were not delivered during his lifetime; and, second, it is alleged that in any event the mortgage was not recorded before the death of W. H. Glynn and therefore, because his estate is insolvent, appellant can claim no priority to the property therein named over the rights of general creditors. That was

the view taken of the matter by the district court, and accordingly that tribunal directed a verdict in appellee's favor.

On this appeal the appellant, so far as material to the present discussion, argues three propositions. They are: First, that the note and mortgage were delivered before the death of W. H. Glynn; second, that, however this may be, the personal property had been delivered to appellant at or before the time the note and mortgage were executed, and consequently it was not necessary to record the mortgage; and, third, it is claimed there should be a reversal because the district court allowed the appellee to introduce into the evidence a portion of the appellant's answer after an amendment thereto had been made.

I. As before indicated, it is claimed by the appellant at the outset that the note and mortgage were delivered to her by W. H. Glynn before his death. If a jury question is presented on that issue then the conclusion of the district court is wrong. There are many facts and circumstances in the record indicating or tending to show that the note and mortgage were in fact delivered to appellant before the death of her brother.

Apparently during April, 1930, W. H. Glynn was in poor health and believed that he could not live much longer. His physician and also his lawyer advised Mr. Glynn that his business affairs should be promptly and finally arranged, because death might come at any time. According to the testimony, it may be found that W. H. Glynn had discussed with appellant, his sister, the matter of giving her security for the $2,500 indebtedness. So, it is said that before April 25, 1930, he removed or caused to be removed the aforesaid personal property from his own farm over to the home of appellant. Upon that occasion, W. H. Glynn said to the appellant, after he had delivered the live stock: "They are yours." While there may be a dispute in the record concerning some of these facts and the aforesaid statements made in reference thereto, nevertheless there is testimony on which a jury could base a finding that the aforesaid personal property was thus moved from the W. H. Glynn farm over to the home of the appellant. The contention is made that appellant's home in fact belonged to or was controlled by W. H. Glynn. Nevertheless there is evidence in the record indicating or tending to prove that the eighty acres of land on

which appellant lived belonged to her, and not to her brother W. H. Glynn.

After the time when it was said by the witnesses that the above-named personal property had been thus transferred from one home to the other, W. H. Glynn visited the home of the appellant, on April 25, 1930. When in appellant's home, it is said by the witnesses that W. H. Glynn discussed with his sister the question of giving her the aforesaid note and mortgage. Manifestly the appellant is handicapped at this juncture because of the so-called Dead Man's Statute. Due to that statute, she cannot relate a conversation with her brother, who since has died. However, other witnesses at appellant's home on that occasion have related what was said and done by appellant and her brother, W. H. Glynn.

John Monaghan testified:

"I heard them (appellant and W. H. Glynn) talk about different things, about indebtedness. Well, I heard them say that on Friday afternoon he (Glynn) was going up to Cumming and give Bridget (appellant) a mortgage and note for what he owed her. She (appellant) told him (Glynn) 'All right.'"

Another witness, Rose Walker, stated that W. H. Glynn said he was going up to Cumming to the bank to "fix out a mortgage for" appellant. This witness also declared that Mr. Glynn asserted upon this occasion "he was going to leave the mortgage and note at the bank." In connection with this testimony, it is to be remembered that appellant on that occasion, according to the witnesses, said in reply: "All right."

As a matter of fact a jury can find that W. H. Glynn did go to Cumming on the afternoon of April 25, 1930, and when there went to the bank. While in the bank he consulted the cashier, Mr. R. E. Beery, according to the latter's testimony. It is said by Mr. Beery that Mr. Glynn had spoken of this mortgage on prior occasions. At this time Mr. Glynn told Mr. Beery about his health and the advice of the physician and attorney. The note and mortgage were prepared by Mr. Beery. After their preparation, each was signed by W. H. Glynn and the mortgage acknowledged by him before a notary public. According to the testimony of Mr. Beery, Mr. Glynn directed that the mortgage be filed with the county recorder, and then

in the same sentence Mr. Beery further testified that Mr. Glynn "left the note and a copy of the mortgage for (appellant) here." A delivery of the note and mortgage, of course, was essential to give validity to the instruments. Lathrop v. Knoop, 202 Iowa 621; Meredith v. Beadle, 211 Iowa 390; Smouse v. Waterloo Savings Bank, 198 Iowa, 306; Jones v. Betz, 203 Iowa 767; Wells v. German Insurance Co., 128 Iowa 649. Generally speaking, a delivery cannot be made by an agent after the principal's death. Such death, under the general rule, terminates the agency. Whitney v. Krasne, 209 Iowa 236; Furenes v. Eide, 109 Iowa 511; Adams v. Adams, 70 Iowa 253.

These cases, of course, are to be distinguished from the authorities authorizing the delivery of a deed or other instrument after death. See Vosburg v. Mallory, 155 Iowa 165. In the case at bar, however, the note and mortgage delivered to appellant by her brother W. H. Glynn were not intended by him to be delivered after death. Does the evidence, then, indicate or tend to show that it was the intention of appellant and W. H. Glynn that the note and mortgage were delivered to her after they had been executed by him and left at the bank in Cumming? Is the foregoing evidence, under all the circumstances, sufficient to warrant a jury in finding that the note and chattel mortgage were thus delivered to appellant before the death of W. H. Glynn? Obviously a jury question is presented.

W. H. Glynn and the appellant, the jury could find, intended and agreed that the delivery of the papers was completed when left at the bank. Neither W. H. Glynn nor the appellant intended, it can be found, that the mortgage was to be filed before delivery. A delivery, according to their intention, the evidence tends to show, arose when W. H. Glynn had executed the papers and left them with Mr. Beery in the bank. Under the statute permitting the filing of the chattel mortgage with the county recorder, it is expected that the instrument shall remain in that office. Section 10017 of the 1931 and preceding Codes. Clearly, it can be found under the circumstances, it was not essential that W. H. Glynn make manual delivery of the note and mortgage to the appellant. This court said, in Kyle v. Kyle, 175 Iowa 734, reading on page 738:

"* * * actual manual transfer of the paper is not neces-

sary. A delivery may be effected by acts without words, or by words without acts, or by both words and acts. Assuming the instrument to have been properly executed ready for delivery, acts and words evincing intent to part with it and relinquish the grantor's right over it is a sufficient delivery. * * * In final analysis, it may be said that delivery is a matter of intent, and any distinct act or word by the grantor with intent to pass the title to the grantee by transferring the deed to him or to another for his benefit is a delivery.''

Again this court declared in Farmers Savings Bank v. Cash, 199 Iowa 597, reading on page 605:

''No particular form or ceremony is essential, to constitute delivery, nor is manual possession by the grantee necessary. The intent is important * * *.''

To the same effect see Mason v. Cater, 192 Iowa 143; Lawrence v. Scurry, 187 Iowa 1055; Kiser v. Morton Farmers' Mutual Insurance Association, 213 Iowa 18; In re Higgins Estate, 207 Iowa 95; Lathrop v. Knoop (202 Iowa 621), supra; Leighton v. Leighton, 196 Iowa 1191; McKemey v. Ketchum, 188 Iowa 1081; Tutt v. Smith, 201 Iowa 107.

Not only is the foregoing true, but likewise a delivery of the mortgage to a third person for the mortgagee indicates, under proper circumstances, a completed delivery. Such delivery, this court declared in Kyle v. Kyle, (175 Iowa 734) on page 738, supra; ''* * * may be made direct to the grantee or to a third person in his behalf.''

For similar authorities see Lawrence v. Scurry (187 Iowa 1055), supra; Hinson v. Bailey, 73 Iowa 544; Furenes v. Eide (109 Iowa 511), supra; Adams v. Adams (70 Iowa 253), supra.

If a jury is so inclined, it may properly find that appellant and W. H. Glynn intended that the note and mortgage would be finally delivered when, as before said, the instruments were signed at the bank. Thereafter W. H. Glynn had no right, it may be found, to recall or retake those instruments. The circumstances in the record above recited, a jury might find, indicate that W. H. Glynn and his sister, the appellant, so intended. When considering this issue a jury could well realize that W. H. Glynn did not want delay. Both his physician and law-

yer, it is said, advised haste. There had been a delivery of the chattels to appellant, a jury could find, and likewise that body could decide that because of the many circumstances the note and mortgage themselves were completely delivered to, and accepted by, the appellant when W. H. Glynn signed them in the bank. Obviously, then, a jury issue was presented on this question, and the district court improperly held otherwise.

II. But it is said by the appellee that even though the foregoing be true, nevertheless the verdict was properly directed in his favor because the mortgage had not been filed or recorded before the death of W. H. Glynn. This argument is based upon Blackman v. Baxter, Reed & Co., 125 Iowa 118; In re Estate of Blackman, 143 Iowa 553; Raybourn v. Creger, 204 Iowa 961, 962. In the case of Blackman v. Baxter, Reed & Co. (125 Iowa 118), supra, we said:

"There can be no race between creditors for the assets of a dead man. After his demise neither the recording of an incumbrance nor the taking of possession can confer a preference. All rights are of necessity to be adjudicated as of the date of decedent's death, and, as in an insolvent estate the administrator takes the property for the benefit of the creditors, their interest in the assets relates back with his title and right of possession. Certainly the creditors ought not to suffer because of the delay incident to the course of probate procedure, without fault on their part. Had any of the creditors caused a writ of attachment or execution to be levied an instant before Blackman's death, the mortgage as to them, if without notice, would have been void. After his death they were powerless to make such a levy. Are they to be deprived of the opportunity of assailing the mortgage by the debtor's death, and this through no fault of their own? Has death rendered a void mortgage valid? Certainly not. But it has changed the procedure. The administrator has taken title and possession, and, regardless of the date of appointment, that title and possession, according to the common law * * * relate back to the time of dissolution. In an insolvent estate that title and possession is in the trustee for the benefit of creditors. Their interest in the property attaches the instant of the decedent's death, and, as representing them, the administrator may insist upon the invalidity of the un-

recorded mortgage. The result is equitable, for it avoids clandestine preferences, and distributes the assets of the insolvent estate among all creditors alike.''

Two reasons appear in the record why a directed verdict cannot be made upon the principle announced in these cases. To begin with, there is evidence in the record, as before indicated, from which a jury may find that the chattels were in the possession of appellant at the time the mortgage was executed. That being true, there is no need, under the statute, for either filing or recording the mortgage. Section 10015 of the 1931 and preceding Codes; Raybourn v. Creger (204 Iowa 961, 962), supra. If the jury should find, then, that the chattels were thus in the possession of the appellant at the time the mortgage was executed, the rule announced in the last-named cases would not apply. There being a jury question on this proposition, the district court erroneously decided the issue as a matter of law. Not only is there a jury question on that issue, but likewise such question arises concerning the insolvency of W. H. Glynn. Unless W. H. Glynn was insolvent at the time, the above and foregoing cases do not apply. With that uncertainty concerning the insolvency, the district court again erroneously decided the issue as a matter of law.

It is also said by appellant that the district court erred because it permitted the appellee to introduce into the evidence a portion of appellant's answer, containing material admissions, after appellant had amended the same.

Clearly the appellant is in error concerning this ruling of the district court. A material admission contained in the pleadings of a party may be introduced into evidence by the adverse party, even though the pleader affected afterwards amended his pleading and thereby removed, so far as the issues are concerned, the subject-matter admitted into evidence. While it is true that the pleader has a right to amend his pleadings and make corrections, yet the adverse party has the privilege of relying upon admissions made in such original pleading. In that event, however, the party affected may explain that such admissions ''were made by mistake or without authority.'' McDermott v. Mahoney, 139 Iowa 292; Wood v. American Yeomen, 140 Iowa 98; McClure v. Accident Association, 141 Iowa 350; Arnd v.

Aylesworth, 145 Iowa 185; Raridan v. Central Iowa Railway Co., 69 Iowa 527; Shipley v. Reasoner, 87 Iowa 555; Ludwig v. Blackshere, 102 Iowa 366.

Other matters are argued, but in view of the fact that a retrial is hereby granted, we find it unnecessary to consider them.

Wherefore, because of the errors found in Divisions I and II, above, the appellant is entitled to a new trial. Therefore, the judgment of the district court must be and hereby is reversed.— Reversed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.